In the Matter of INVESTORS FUNDING CORP. OF NEW YORK, IFC COLLATERAL CORP., et al., Debtors.

JAYTEE–PENNDEL CO., Appellant,

v.

James BLOOR, Reorganization Trustee, Appellee.

No. 104, Docket 76–5019.

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1976.

Decided Dec. 15, 1976.

---

Dennis G. Katz, P.C., Spring Valley, for appellant.

Alan B. Miller, New York City (John M. Schwartz, Prudence B. Abram, Neal Schwarzfeld, and Weil, Gotshal & Manges, New York City, of counsel), for appellee.

Before SMITH, OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

On November 1, 1974, appellee James Bloor was appointed reorganization trustee of IFC Collateral Corp. (IFC), its parent, Investors Funding Corp. of New York, and 32 other subsidiaries of the parent, under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 *et seq.*, pursuant to petitions filed in the United States District Court for the Southern District of New York on October 21 and 30, 1974. From that time to this he has carried on the debtors' businesses.

One asset of IFC taken over by the trustee was a "wraparound" mortgage on an apartment complex in Pennsylvania owned by appellant Jaytee-Penndel Co. (Jaytee). This mortgage, a second or subordinate mortgage, included in its principal amount the balance of the first or prior mortgage, interest being payable under the wraparound mortgage on the entire principal amount at a higher rate (7¾%) than under the original first mortgage (6%). Jaytee was obligated to pay to IFC each month the amount of principal and interest due on the wraparound mortgage, and IFC (or any successor in interest), in turn, was obligated, prior to the 15th of each month, after re-

ceipt of Jaytee's payment, to forward the amount due the first mortgagee, Buffalo Savings Bank. IFC received three key benefits from the wraparound mortgage: assurance of prompt payment of the Buffalo first mortgage; the difference between the 6% interest due on the first mortgage to Buffalo Savings and the 7¾% due on the wraparound mortgage, *i. e.*, 1¾% on the principal amount of the first mortgage; and, because the monthly rate of amortization was significantly faster on the first than on the second mortgage (the term of the first was shorter), a continuously increasing equity interest.

When appellee, newly appointed as trustee of IFC, failed to forward the November, 1974, payment to the Buffalo Savings Bank until the 18th of the month—three days late—Jaytee brought suit in the New York State Supreme Court. It there sought a declaratory judgment that the trustee had breached his contract with Jaytee, and sought as damages a few hundred dollars in late charges and interest required to be paid to the Buffalo Bank to reinstate the first mortgage. More importantly, Jaytee also asked the court to "reform and re-cast" the wraparound mortgage, not just by permitting payments to be made directly by the mortgagor to the Buffalo Bank, but by "unwrapping" the underlying first mortgage. Were appellant to prevail in its state court suit, the wraparound mortgage would become a simple second mortgage, diminishing both the interest and principal amounts ultimately due from Jaytee to IFC by some $700,000, and altering the parties' long-term obligations and relationship accordingly.

Appellee trustee then applied to the United States District Court for the Southern District of New York, the court with jurisdiction over IFC's federal Chapter X proceedings, for an order enjoining Jaytee's state court action. A temporary restraining order was issued on August 13, 1975, and was made permanent on March 15, 1976, after hearings before Judge Bonsal sitting in bankruptcy. In the same proceeding, the court ordered Jaytee to com-pensate the trustee for payments withheld from IFC during the dispute and devised a new procedure for the parties to use in making payments on the Buffalo mortgage (whereby checks payable to the Buffalo bank in the amounts due to it would be sent to the trustee for forwarding to Buffalo, together with a check covering the further amount due under the wraparound mortgage). The only finding made by the court was that the relief sought "is in the best interests of" the trustee, IFC, and its creditors. *In re Investors Funding Corp.*, 422 F.Supp. 461 at 464 (S.D.N.Y.1975). From this order Jaytee appeals, as authorized by 11 U.S.C. § 47.

### The Injunction

A reorganization court has unquestioned power under Section 116(4) of Chapter X, 11 U.S.C. § 516(4), to enjoin proceedings against the bankrupt in other forums to protect the estate from interference and to ensure its orderly administration. *Diners Club, Inc. v. Bumb*, 421 F.2d 396, 398 (9th Cir. 1970); *see Steelman v. All Continent Corp.*, 301 U.S. 278, 289–90, 57 S.Ct. 705, 81 L.Ed. 1085 (1937) (Cardozo, J.). This power is limited, however, in situations in which the trustee or a debtor in possession is carrying on the business connected with the property entrusted to him. *See Vass v. Conron Bros.*, 59 F.2d 969, 971 (2d Cir. 1932) (L. Hand, J.). On the theory that a citizen has a right to have his demand determined locally when it is not inconsistent with the purposes of the Bankruptcy Act, *see 6 Collier on Bankruptcy* ¶ 3.31[2] (14th ed. 1972), 28 U.S.C. § 959(a) provides that trustees "of any property . . . may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property," subject to "the general equity power of [the bankruptcy] court so far as the same may be necessary to the ends of justice." *See Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors)*, 550 F.2d 47, 57 (2d Cir. 1976).

The two parts of § 959(a), allowing trustees to be sued but reserving in the bankruptcy court a "general equity power" to stop such suits when "necessary to the ends of justice," appear to conflict with each other and with § 116(4) of Chapter X to some degree. Yet they all can and should be read in harmony to achieve their respective purposes. The harmonizing construction that we adopt, one which we believe accords with the legislative history of § 959(a), see *Diners Club, Inc. v. Bumb, supra,* 421 F.2d at 398–99, is that a court action against reorganization trustees relating to business activities of the bankrupt carried on by the trustee may proceed unless the bankruptcy court, exercising sound discretion, finds that the action would embarrass, burden, delay or otherwise impede the reorganization proceedings. *See id.* at 400–01; 6 *Collier on Bankruptcy, supra,* at 650.

The fact that the value of the estate administered by the trustee might be reduced by a suit is not alone sufficient to justify an injunction. If value alone were enough, every ordinary commercial dispute of a company involved in reorganization could conceivably wind up being administered by the bankruptcy court. Traditional plenary court jurisdiction would be interfered with needlessly, and achieving the purposes of reorganization would be more difficult to the extent that creditors were unwilling to do business with a company all of whose disputes go to bankruptcy court. *See Fidelity Mortgage Investors v. Camelia Builders, Inc., supra,* at 57. These policy judgments also accord with the bankruptcy policy against enjoining suits in other courts, except upon a satisfactory showing that prosecution of the action would hinder the administration of the debtor's estate. *See Thompson v. Texas Mexican Railway,* 328 U.S. 134, 140–41, 66 S.Ct. 937, 90 L.Ed. 1132 (1946); *Foust v. Munson Steamship Lines,* 299 U.S. 77, 84, 57 S.Ct. 90, 81 L.Ed. 49 (1936); *Diners Club, Inc. v. Bumb, supra,* 421 F.2d at 401–02; *Novo Enzyme Corp. v. Baker,* 361 F.Supp. 337, 338–39 (S.D.N.Y. 1973); *City of Bridgeton v. Central Railroad Co.,* 126 N.J.Super. 196, 199, 313 A.2d 622, 624 (1973).

A reorganization court, therefore, should generally make specific, sequential findings before it enjoins a state suit against a reorganization trustee. It must decide first whether the lawsuit relates to "routine" business activities of the debtor that are carried on by the trustee. *Fidelity Mortgage Investors v. Camelia Builders, Inc., supra,* at 57. If the lawsuit is not so related, it may be enjoined. *See id.* at 56–57; *Vass v. Conron Bros., supra,* 59 F.2d at 971. If the lawsuit is so related, however, the court must make a further finding before an injunction may issue: that the suit will embarrass, burden; delay or otherwise impede the reorganization proceeding. *Accord, Diners Club, Inc. v. Bumb, supra,* 421 F.2d at 401, 402.

Since the district court made no finding on the matter, we will assume, for purposes of this appeal, that the state lawsuit at issue here relates to a routine ongoing business activity of the reorganized estate, such as mortgage administration or servicing. If the suit were not so related, of course, we could affirm the district court's order without further inquiry. The district court similarly made no finding on the question of embarrassment to the reorganization proceeding, and this would require us to remand if we were faced with the typical lawsuit, *e. g.,* for money damages for failure to make the specific November payment to the Buffalo bank on time.

But the main purpose of the suit brought against the trustee here is to revamp or alter a substantial interest in property administered by the court, which must necessarily lead to embarrassment to the estate. *See Ex parte Baldwin,* 291 U.S. 610, 618, 54 S.Ct. 551, 78 L.Ed. 1020 (1934) (Brandeis, J.). The suit is designed to revise the trustee's interest in an item of intangible property, a wraparound mortgage, by "unwrapping" it, thereby changing not only the value of the res by a very substantial amount ($700,000), but also changing the trustee's performance of his servicing

duties in the future. Damages for the act of the trustee in omitting to make the timely payment to Buffalo would be only incidental to the real relief sought in the state court suit, just as the damages sought for failure to maintain contractually mandated passenger service in *Ex parte Baldwin, supra,* were incidental to the forfeiture of the railroad right-of-way that was sought as a remedy for the breach of contract, *id.*

Added to the revision of a property interest, with attendant changes in the trustee's future duties, is the embarrassment to the reorganization that would come from being forced to defend a lawsuit in New York while bringing a foreclosure proceeding in Pennsylvania—a real possibility if the federal reorganization court were not to intercede in the New York suit. The property that is the subject of the wraparound mortgage is located in Pennsylvania, and foreclosure of that mortgage would presumably require suit by the trustee in a Pennsylvania court. The trustee has sought leave to bring a foreclosure suit, because Jaytee has been paying the Buffalo bank directly for several months, rather than paying the trustee the first mortgage payments, and thus is at least in technical default under the wraparound mortgage. The cost of being forced to participate in a multiplicity of suits in the courts of Pennsylvania and New York, the possible delays in connection therewith, and the ultimate possibility of further litigation to resolve differences in the relief afforded by the state courts additionally serve to render the district court's exercise of its discretion sound.

### The Money Award

■ The money award against appellant, for the payments withheld from IFC during the dispute (less amounts paid by appellant to the Buffalo Savings Bank and late charges arising from the trustee's November, 1974, late payment), must, however, be vacated. The trustee in this case did not commence a plenary suit against Jaytee; he merely invoked the summary jurisdiction of the reorganization court, under which, to be

sure, most controversies in relation to the reorganized estate may be determined, 11 U.S.C. § 11a(7). But, as recognized in *In re Roman,* 23 F.2d 556, 558 (2d Cir. 1928) (L. Hand, J.), a federal bankruptcy court has no summary jurisdiction to enforce the bankrupt's claims against third parties. *Accord, Baker v. Troiano (In re Lehigh & Hudson River Railway),* 468 F.2d 430, 433 (2d Cir. 1972) (Friendly, C. J.); *see Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 476, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974) (Stewart, J., concurring). The payments here due arise from the debt underlying the mortgage and thus fall squarely within *Roman's* jurisdictional limitation. This limitation does not apply when the third party's claim is disingenuous or insubstantial, *Cline v. Kaplan,* 323 U.S. 97, 98–99, 65 S.Ct. 155, 89 L.Ed. 97 (1944), but Jaytee's position in respect to the late charges and penalties is clearly substantial enough to require that the trustee bring a plenary action, such as the foreclosure action for which he has sought permission. Judge Bonsal understandably hoped to save all the parties the expense of an additional action by cutting through legal "rights" to reach what would seem to the casual observer a very equitable and practical solution to the controversy, but he simply lacked the power to do so here.

We affirm the order as to the injunction against prosecution of the state court suit. We reverse as to the money award against appellant and remand to the district court for further proceedings in accordance with this opinion.