**CITATION CYCLE COMPANY, INC., Debtor-Appellant,**

v.

**Nathan YORKE, Trustee, and Canada Cycle and Motor Co., Intervenors, Appellees.**

**No. 81–2932.**

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1982.
Decided Nov. 23, 1982.*

---

* This appeal was originally decided by unreported order on August 3, 1982. See Circuit Rule

35. The Court has subsequently decided to issue the decision as an opinion.

Richard L. Hirsh, Chicago, Ill., for debtor-appellant.

Sheldon O. Collen, Rowe W. Snider, Friedman & Koven, Chicago, Ill., for intervenors, appellees.

Before CUMMINGS, Chief Judge, Floyd R. GIBSON,** Senior Circuit Judge, and CUDAHY, Circuit Judge.

CUMMINGS, Chief Judge.

This appeal is presumably the last stage in a long, bitter, and unseemly struggle over the assets of the bankrupt Citation Cycle Company (Citation).[1] An involuntary bankruptcy petition was first filed against Citation in 1976. On May 25, 1977, by agreement of Citation and its creditors, it was dismissed without prejudice and replaced the same day with a new involuntary petition.[2] Thereafter the parties agreed that there were no factual issues in dispute and drafted a stipulation that put before Bankruptcy Judge James a single legal issue.[3] Judge James was to decide whether

---

** The Honorable Floyd R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

1. This case is governed by the Bankruptcy Act of 1898 as amended, repealed 11 U.S.C. §§ 1 *et seq.* All statutory references are to that now superseded Act.

2. The record does not reveal why a new petition was necessary, and the dismissal without prejudice of the first petition and the filing of the second one caused problems throughout the proceedings. For example, the creditors assumed that claims filed in Citation I would stand as claims in Citation II without new filing, but ultimately had to obtain a ruling to that effect. Agreed Order, August 11, 1980. The date of the second petition was also once in doubt. Thus a letter from the creditors' attorneys to Citation's counsel, dated July 27, 1977, says that the petition in Citation II was filed on June 8, 1977. However, Judge Getzendanner's order of October 27, 1981, Judge James' order of July 2, 1980, and ABC's and Citation's motions to vacate the adjudication of bankruptcy (Exhibits A and C to Citation's brief) all refer to May 25, 1977 as the filing date. That date is also used in the stipulation of facts (note 3 *infra*). It will be accepted herein.

3. The stipulation reads:
   Now COMES [sic] the petitioning creditors and the Debtor through their respective counsel and herein set forth by stipulation and agreement certain facts:
   1. The petitioning creditors filed an Involuntary Petition for Adjudication in Bankruptcy on the 25th day of May, 1977 and the

under Illinois law creditor Finney Company's lien on goods and chattels arose when a writ of execution on its judgment against Citation was delivered to the sheriff or when there was an actual attempt to levy on the property of Citation, the judgment debtor. The parties represented to the judge that if delivery to the sheriff was the critical event, then Citation could be adjudged a bankrupt; if service on the debtor was critical, then Citation had committed no act of bankruptcy during the four months preceding the petition and could not be adjudged a bankrupt. Judge James found that a judgment lien arises in Illinois upon delivery of the writ of execution to the sheriff and therefore decided that Citation was a bankrupt. Memorandum and Order, December 6, 1977.

The only asset Citation had was an antitrust claim against the Canada Cycle and Motor Company (CCM).[4] Accordingly the bankruptcy trustee set about to recover

> Debtor has filed his Answer and Amended Answer thereto and the parties herein agree that the petitioning creditors' only valid allegation arises as described in paragraph two, hereof.
>
> 2. One of the allegations of the petitioning creditors['] complaint is that a certain creditor, namely the Finney Company, a corporation, obtained a judgment against the alleged Debtor in the Circuit Court of Cook County, Municipal Division in Cause No. 75MI107586 and that execution was issued by the Clerk of Cook County on April 29, 1977 and delivered to the Sheriff of Cook County on the same date.
>
> 3. The Sheriff of Cook County was never able to perfect service of the execution above described.
>
> 4. That the facts above constitute an Act of Bankruptcy pursuant to the Bankruptcy Act Sec. 3(3) if, under the law of the State of Illinois, the delivery of an execution upon a judgment to the Sheriff constitutes perfection of a lien, if said lien is not perfected until service of process of said execution upon the defendant then an Act of Bankruptcy did not occur.
>
> 5. That the petitioning creditors attempted to serve the execution on the alleged Bankrupt at 201 Scott St., Elk Grove Village, Illinois, and at no other address.

Section 3(a)(3) of the Bankruptcy Act (11 U.S.C. § 21(a)(3)) provides in relevant part: [An act] of bankruptcy by a person shall consist of his having * * * (3) suffered or permitted, while insolvent, any creditor to

that cause of action for the bankruptcy estate and ultimately for Citation's unsecured creditors. To do so, he had to institute an adversary proceeding in the bankruptcy court against Bernard A. Savage, Jr. and the American Bicycle Company (ABC), a former subsidiary of Citation. ABC and Citation were both effectively controlled by Savage,[5] and the trustee's contention was that Citation's transfer of all its accounts receivable and its antitrust claim to ABC, its former subsidiary, had been a fraud on Citation's creditors.[6] That Bankruptcy Rule 701(2), (3) proceeding culminated in the bankruptcy court's finding that the trustee could use the chose in action for the benefit of the estate, free and clear of all claims by ABC. Memorandum and Order, November 20, 1980.

While the trustee's proceedings against ABC and Savage were going on—and going badly for them—ABC and Citation

> obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such lien *within thirty days* from the date thereof or at least five days before the date set for any sale or other disposition of such property (emphasis supplied).

4. Citation sued CCM for violating Section 1 of the Sherman Act (15 U.S.C. § 1) on September 9, 1974. That case, No. 74 C 2658, is currently pending before Judge Grady in the Northern District of Illinois. CCM has counterclaimed therein for goods sold and delivered ($249,870 plus interest and costs—the same amount it is claiming in the bankruptcy proceedings).

5. Mr. Savage owned 60% of Citation, which in turn created ABC and capitalized it with the assignment of Citation's accounts receivable. Subsequently, Mr. Savage assigned all his interest in ABC to International Marine, Inc., a corporation he owns and controls; and International Marine purchased Citation's remaining interest in ABC. Record, Doc. # 37, p. 79.

6. CCM would clearly be better off, if it has to pay antitrust damages at all, to pay them to the bankruptcy trustee for Citation, and thereby create funds from which it as Citation's largest general creditor would receive payment. If ABC retained the Citation antitrust claim, the potential damages would never accrue to the bankruptcy estate, and CCM would have an unsecured claim in a no-asset case.

launched an attack on the underlying adjudication of Citation's bankruptcy. On February 6, 1980, they presented to Judge James a motion to vacate the bankruptcy adjudication, in essence a motion to reconsider the December 6, 1977, decision. They argued that the attorneys who had filed the 1977 involuntary bankruptcy petition had been acting without authorization from their clients.[7] Judge James ruled against ABC and Citation on July 2, 1980, and they appealed his decision to the district court. On January 18, 1981, Judge Shadur dismissed their appeal for want of prosecution under Rule 41(b) of the Federal Rules of Civil Procedure.[8] That dismissal, which operated as a decision on the merits,[9] was never appealed.

Meanwhile, back in bankruptcy court, Citation had filed a motion to reconsider Judge James' July 2 ruling denying the motion to vacate the 1977 bankruptcy adjudication. This November 25, 1980 motion was again labeled a motion to vacate [the bankruptcy] adjudication and dismiss [the second involuntary bankruptcy] petition. This time Citation's theory was that, despite the stipulation that had narrowed the issues to a single one (note 3 *supra*) and despite Judge James' December 6, 1977, decision on that legal question, Citation could not properly be adjudged a bankrupt. Citation argued that either (a) the judgment lien of creditor Finney Company against Citation had been filed while the Bankruptcy Rule 601 automatic stay from the first, dismissed petition was still in effect,[10] or (b) Citation had not had thirty days in which to try to vacate or discharge the lien before the second petition was filed, so that there was no act of bankruptcy.[11] Again Judge James ruled against Citation (Memorandum and Order, January 20, 1981). Citation filed another motion to reconsider on January 30, 1981, reiterating that there never was an act of bankruptcy; and Judge James denied that motion as well on March 27, 1981. Again Citation appealed to the district court. On October 27, 1981, in a memorandum opinion and order, Judge Getzendanner dismissed this appeal.[12] It is the refusal of the district court to hear the second appeal that Citation challenges in this Court, and we find the refusal proper.

█ Appellees argued various grounds in the district court to justify the dismissal. In our opinion the one Judge Getzendanner chose—*res judicata*—is not applicable. But either of the others—estoppel or laches— would have been correct. It is of course within our power to affirm the district court decision on grounds other than those relied on by the district judge. *Panter v.*

7. This appears to be one of the places where the May 25, 1977, dismissal of Citation I and the filing of Citation II on the same day created a problem. The attorneys had explicit authorization to file Citation I in 1976 and advised their clients that they were going to take a dismissal without prejudice and file Citation II. They did not obtain separate authorization to file Citation II. Judge James found no merit in ABC's and Citation's motion, and denounced ABC's conduct in relying on misleading affidavits and hearsay as "obviously improper." Memorandum and Order, July 2, 1980, at 4–6; quoted language at 6.

8. Judge Shadur also denied a motion for reconsideration on March 11, 1981.

9. Rule 41(b) provides that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision * * * operates as an adjudication upon the merits."

10. Citation argues that the lien violated either Bankruptcy Rule 601 or 401(a). Reply Br. 5. Neither stay rule has any apparent application to the situation where the sheriff has the writ but (as here) cannot find the debtor or the property. See note 3 *supra*. An attempt to enforce the lien would have violated the stay, but matters never proceeded that far.

11. See the statutory definition of an act of bankruptcy, note 3 *supra*. It is not clear what Citation would have done with the additional few days, since it had conducted no business since 1975 (Appellees' Br. 24, n.23). Moreover, Citation admits that the stipulation "does appear to waive the thirty-day requirement" (Reply Br. 5).

12. There was considerable dispute between the parties in the district court and here about whether the proper bankruptcy procedures had been followed and whether the appeal to the district court was timely. The briefs have not illuminated these highly technical arguments, and we decline to make them the basis of our decision.

*Marshall Field & Co.,* 646 F.2d 271, 281 (7th Cir.1981), certiorari denied, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631.

■ Judge Getzendanner understandably[13] assumed that Judge James' July 2, 1980, ruling that was appealed to Judge Shadur had been in response to a broad attack by Citation and ABC on the subject matter jurisdiction of the bankruptcy court.[14] She apparently thought that both contentions—*i.e.,* that the creditors' attorneys had acted without proper authorization and that there had been no act of bankruptcy—were before Judge James at that time, that both contentions were also included in the appeal to Judge Shadur, and that both were therefore barred from further consideration by the Rule 41(b) dismissal of that appeal. In fact Judge James' July 2, 1980, ruling had dealt only with the alleged impropriety of the attorneys' actions; the act of bankruptcy argument was first raised in the November 25, 1980, second motion to vacate and again in the January 30, 1981, motion to reconsider Judge James' January 20, 1981, decision.[15] The July 2, 1980, denial of the original ABC-Citation motion to vacate the bankruptcy adjudication and consequently Judge Shadur's Rule 41(b) dismissal of the appeal would not necessarily preclude subsequent motions to reconsider or vacate, whatever their grounds.[16] But apart from the doctrine of *res judicata,* which was inapplicable on this state of the record, other grounds clearly bar Citation's appeal: this is a textbook case for applying doctrines of estoppel and laches, which are particularly appropriate in the context of bankruptcy proceedings.

■ Estoppel "arises * * * when one has so acted as to mislead another and the one thus misled has relied upon the action of the inducing party to his prejudice." *Lebold v. Inland Steel Co.,* 125 F.2d 369, 375 (7th Cir.1941), certiorari denied, 316 U.S. 675, 62 S.Ct. 1045, 86 L.Ed. 1749. Laches requires no reliance. It bars recovery where "deferment of action to enforce claimed rights is prolonged and inexcusable and operates to [the non-delaying party's] material prejudice." *Boris v. Hamilton Manufacturing Co.,* 253 F.2d 526, 529 (7th Cir.1956). See the discussion of both doctrines in *Advanced Hydraulics, Inc. v. Otis Elevator Co.,* 525 F.2d 477, 479–480 (7th Cir.1975), certiorari denied, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99.

Citation's stipulation estops it to raise now the issues comprehended in this appeal. Citation had represented to Judge James that the only issue he had to decide was when an Illinois judgment ripens into a lien. Put another way, Citation had in effect

13. Not least because several of the documents filed in her courtroom bore stamps indicating that they had previously been filed in Judge Shadur's case.

14. In her October 27, 1981, opinion (p. 3, n. *) the district judge focused on Judge James' remark, "American Bicycle may bring to the court's attention the question of whether this court has *subject matter jurisdiction,* a question that the court will deal with later in this memorandum." July 2, 1980, Memorandum and Order, p. 2 (emphasis added). In context, however, the remark addresses standing problems: ABC as a creditor could not contest the involuntary petition on any other grounds. *Id.* Judge James' later discussion of the merits, though denominated a decision about subject matter jurisdiction (*id.* at 5), seems primarily to consider personal jurisdiction.

15. In fact, after Judge James denied ABC's first motion to vacate the bankruptcy adjudication on July 2, 1980, Citation addressed another such motion to him on November 25, 1980, again asking him to reconsider. That motion was denied on January 20, 1981, and was followed by a January 30, 1981, motion to reconsider which was denied on March 27, 1981. Citation appealed both denial orders (January 20, 1981 and March 27, 1981) to Judge Getzendanner (Exhibit E to Citation Brief).

Citation's and ABC's efforts illustrate the law of diminishing returns, but for the reasons set out in note 12 *supra* we do not explore these procedural intricacies further.

16. Motions to reconsider or vacate must meet the formal requirements of either Bankruptcy Rule 923 (modeled on Fed.R.Civ.P. 59) or Bankruptcy Rule 924 (modeled on Fed.R.Civ.P. 60). ABC's and Citation's three motions must be based on the equivalent of either Fed.R.Civ.P. 60(b)(4) (void judgment) or 60(b)(6) (catch-all provision), because the bankruptcy adjudication of December 6, 1977 was more than a year old.

conceded the irrelevance of any other facts—including the pendency of the first petition's automatic stay and the interval between the creation of the lien and the May 25, 1977, filing of the second petition. Had Citation taken initially the position it now adopts—i.e., that there was no act of bankruptcy—the creditors would have had various alternatives open. For example, they could have waited a few days longer to file the second petition,[17] or they could have argued that Citation had committed other acts of bankruptcy in the four-month period preceding the filing of the second petition.[18]

But we need not rest solely on the stipulation and its negative inferences. Citation is also estopped by its conduct between December 1977 and February 6, 1980, when ABC (joined by Citation on May 19, 1980) presented the first motion to vacate to Judge James. Throughout that period Citation and ABC actively contested the bankruptcy judge's rulings—most notably the dispute over who was entitled to the antitrust claim—without ever questioning the decision that Citation was a bankrupt. The creditors were entitled to rely, and clearly did rely, on the fact that, however much this litigation resembled trench warfare, at least the one stipulated issue decided by Judge James in December of 1977 was settled.[19]

Laches is a completely independent basis for barring Citation's appeal. We can suppose, purely for the sake of argument, that (1) Citation's stipulation was not binding, since the facts even as stipulated revealed a facial defect about the Finney Company lien; (2) Judge James' December 1977 decision that Citation was a bankrupt was erroneous; and (3) Citation could have had that

determination reversed on direct appeal as the bankrupt did in *Northwestern Pulp & Paper Co. v. Finish Luth Book Concern,* 51 F.2d 340 (9th Cir.1931). We can also assume, again for argument's sake, that Citation took no action in the proceedings, rather than that it first took action wholly at odds with its present position. Citation does not succeed even under these hypothetical assumptions in its favor.

There is a basic distinction—which Citation misapprehends—between a court's jurisdiction to decide a case and its ability to render a correct decision. The distinction is well illustrated by two famous bankruptcy cases, discussed in 2 Collier on Bankruptcy ¶ 301.20[1] (15th ed. 1982). In *Vallely v. Northern Fire & Marine Ins. Co.,* 254 U.S. 348, 41 S.Ct. 116, 65 L.Ed. 297, laches did not bar reopening a bankruptcy adjudication where the alleged bankrupt was an insurance company, not subject to either voluntary or involuntary bankruptcy. But in *In re First National Bank of Belle Fourche,* 152 F. 64 (8th Cir.1907), laches did bar reopening a bankruptcy case to litigate the factual question whether the Widell Company was principally engaged in manufacturing, even though if it were it could not be a bankrupt under the statute then in effect. Citation was amenable to the bankruptcy laws, whether or not it was actually a bankrupt; and it thus falls into the *Belle Fourche,* rather than the *Vallely,* class of cases.

For such cases the appropriate doctrine is that "the court * * * ha[s] the power to make an adjudication on the defective petition and refuse to vacate it thereafter when the equities of the case warran[t] such refusal." 2 Collier on Bankruptcy ¶ 301.20[1]

---

**17.** There is a scintilla of evidence that they tried to do so (see note 2 *supra*).

**18.** The May 1977 petition did not rely solely on the Finney Company lien. Record, Doc. # 1. It is also possible that the fraudulent transfer of the antitrust claim to ABC could have been an act of bankruptcy under either the Citation II petition or an amended version of the Citation I petition. See 11 U.S.C. § 21(a)(1).

**19.** Citation's authority for the proposition that its 1977 stipulation could not create an estoppel is not persuasive. Reply Br. 5. The parties did not purport to stipulate concerning a question of law, *In re Mulcahy,* 3 B.R. 454 (Bkrtcy.S.D. Ind.1980). They left the legal issue as to the Finney Company's judgment lien to be resolved by Judge James. Nor did they attempt to modify (criminal) statutory requirements by stipulation, *United States v. Williams,* 612 F.2d 735 (3d Cir.1979), certiorari denied, 445 U.S. 934, 100 S.Ct. 1328, 63 L.Ed.2d 770.

<br>

**697**

at 301–36 (15th ed. 1982). Here the equities are clear. The pertinent proceedings began in May of 1977,[20] with the filing of the second involuntary bankruptcy petition; the decision Citation attacks was rendered in December of 1977 and dealt with the May 1977 petition; Citation did not begin to try to undermine that decision adjudicating it a bankrupt until May 1980 when it joined in ABC's February 1980 motion to vacate. Even then Citation could not decide what tack to take. Its indecision is illustrated by its abandoning the first appeal in midstream to press an entirely different theory in the bankruptcy court. There is an explanation for Citation's fits and starts: it has had five sets of lawyers since 1977, and each new set has had a different strategy. Explanation, however, is not excuse. While generations of lawyers have cut their teeth on the Citation bankruptcy, the general creditors have been forced to wait for payment, their legal fees and the expenses of administration steadily mounting.[21] It is appropriate under these circumstances to use the doctrine of laches to insulate from continued onslaughts an adjudication that became final more than four years ago.

The district court's decision is affirmed; costs to appellees.

20. This is a somewhat artificial date, since Citation I was first filed a year earlier and there has never been a period since when the creditors could pursue self-help remedies free of an automatic stay. Nonetheless, prejudice attributable to the first filing cannot be blamed solely on Citation. The same three Citation creditors filed both the 1976 and the 1977 petitions.

21. Administration expenses have priority over all other claims on the bankruptcy estate. 11 U.S.C. § 104. The creditors are thus paying twice—once in the form of their own legal fees and once in the inevitable diminution (caused by administration expenses) of the fund from which claims can be paid—for Citation's obstructive tactics.