773 F.2d 909
 Bankr. L. Rep. P 70,764
In re CHICAGO PACIFIC CORPORATION, Debtor-Appellee,
Appeal of ORGANIZATION OF MINORITY VENDORS, INC., et al., Appellants.
 No. 84-2033.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 10, 1985.
Decided Sept. 24, 1985.
 
 Barbara S. Steiner, Jenner & Block, Chicago, Ill., for debtor-appellee.
 Anthony C. Valivlis, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, Ill., for appellants.
 Before HARLINGTON WOOD, Jr., and COFFEY, Circuit Judges, and PECK, Senior Circuit Judge.*
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Appellants, the Organization of Minority Vendors, Inc., et al. ("OMVI"), appeal from an order of the reorganization court, Chief Judge McGarr presiding, denying their requests for leave to file a proof of claim against the debtor, the Chicago, Rock Island and Pacific Railroad Company (the "Rock Island")[1] or for modification of an injunction barring them from pursuing their claims against the Rock Island in an action pending before Judge Moran. Judge McGarr concluded that the OMVI claim was barred as untimely under both Rule 8-401(b)(1) of the Bankruptcy Rules and Order No. 669 of the Reorganization Court.I.
 
 
 2
 The procedural histories of two separate judicial proceedings are crucial to resolution of the major issue whether the reorganization court erred in denying OMVI leave to file its claim: the Rock Island reorganization proceedings and proceedings in a class action lawsuit filed by OMVI against a number of railroad companies charging them with discriminating against Black and Hispanic businesses by refusing to allow them to provide goods and services to defendant railroads and seeking injunctive and monetary relief. The details necessary to an understanding of this appeal follow.
 
 
 3
 In March, 1975, the Rock Island, in serious financial difficulty, sought reorganization under section 77 of the Bankruptcy Act of 1898, 11 U.S.C. Sec. 205 (1976). Although the Trustee, at the direction of the reorganization court, continued rail operations for the next four and one-half years, the losses also continued. On April 16, 1979, OMVI filed a complaint in the district court initiating the above-mentioned proceeding. The Rock Island and its Trustee were listed as defendants in the caption and the Rock Island was described in the body of the complaint. Both were served with process. On June 18, 1979, defendants filed a motion to dismiss the complaint against them, arguing that the reorganization court had exclusive jurisdiction over claims against the Rock Island.
 
 
 4
 On September 26, 1979, the Rock Island, declared cashless by the Interstate Commerce Commission, ceased operation as a rail carrier. On December 28, 1979, the Trustee filed a plan calling for a reorganization built around an operating core railroad. On January 25, 1980, the plan was rejected by Judge McGarr, who ordered the Trustee to cease his efforts to reorganize the Rock Island and to begin liquidation of the Rock Island's assets. On June 2, 1980, Judge McGarr ordered the system-wide abandonment of the Rock Island.[2]
 
 
 5
 On June 17, 1980, OMVI filed an amended complaint in the class action. The district court had never ruled upon the motion to dismiss the original complaint filed by the Rock Island and the Trustee. Although the amended complaint retained the same caption as the original complaint, the Rock Island was not named as a defendant.[3] The Rock Island did not file a responsive pleading to the amended complaint or otherwise participate in the proceedings, though it remained on the service list. No default judgment was sought by OMVI. On January 9, 1981, OMVI filed a memorandum in response to motions to dismiss and for summary judgment filed by the defendant railroads; in that memorandum, OMVI indicated its intention to voluntarily dismiss the Rock Island from the action.
 
 
 6
 In the two-year interim between briefing on these motions and Judge Moran's opinion of December 9, 1983 disposing of these motions, public hearings were held on the first and second amended reorganization plans. Notice of the hearings to begin on September 27, 1983 was published in all editions of the Wall Street Journal on August 11, 1983. Copies of the plan and the notice of hearing on approval of the plan[4] were mailed to all known or potential creditors.[5] Section 3.4 of the plan provided that "all obligations incurred by the Trustee and all obligations of and claims against the Debtor that are outstanding as of the Consummation Date and not otherwise provided for in the Plan will be discharged."
 
 
 7
 The hearing was continued to December 22, 1983, on which date the plan was approved. The plan was then submitted to the creditors and stockholders entitled under Bankruptcy Rule 8-305 to vote on it. The voting report filed by the Trustee with the reorganization court on March 23, 1984, indicated that the plan had been accepted by the requisite number of creditors and stockholders.
 
 
 8
 Judge Moran's opinion disposing of the motions filed by the defendant railroads in the class action, issued on December 9, 1983, several weeks before the plan was approved, had stated that the Rock Island had been dismissed from the action. On April 11, 1984, OMVI filed a motion to amend its complaint to include the Rock Island as a defendant railroad, claiming that the Rock Island had been inadvertently omitted from paragraph 6 of the first amended complaint.
 
 
 9
 On April 19, 1984, a hearing on the confirmation of the plan was held. Notice of the hearing had been served by mail upon all creditors who had made themselves known by previously filing claims or objections. Notice was also published in all domestic editions of the Wall Street Journal on March 29, 1984. This notice stated that those asserting claims against the Trustee in his personal rather than official capacity were required to file those claims no later than April 12, 1984. The plan was confirmed on April 19, 1984. On that same date, a consummation order and final decree were entered. June 1, 1984 was set as the consummation date.
 
 
 10
 On April 26, 1984, the Trustee and the Crown Intervenors filed with the reorganization court a petition to enjoin OMVI from proceeding with its civil suit against the Rock Island and its Trustee. The petition was granted on May 1, 1984.
 
 
 11
 On May 21, 1984, OMVI filed for the first time a proof of claim against the Rock Island in the amount of $60 million. OMVI also sought modification of Judge McGarr's injunction, requesting that its claim against the Rock Island be heard by Judge Moran. The motion to modify was denied and the Trustee was ordered to file his objections to the claim in writing by the following day, May 30, 1984. The Trustee objected on the ground that the OMVI claim was untimely and further contended that OMVI had induced him to believe that it had abandoned its claim.
 
 
 12
 In a minute order dated May 31, 1984, one day before the June 1 consummation date, Judge McGarr denied OMVI's motion to file a proof of claim. The court's reasoning was articulated in a memorandum opinion and order of June 7, 1984. The court concluded that the OMVI claim was untimely under both Bankruptcy Rule 8-401(b)(1) and Order No. 669 of the Reorganization Court. The court found that OMVI had made no showing of "excusable neglect" under Bankruptcy Rule 8-401(b)(3)(c); that the Trustee would be substantially prejudiced if OMVI were allowed to file the claim at the eleventh hour; that the Trustee reasonably believed that OMVI had abandoned its claim against the Rock Island; and that OMVI's failure to include the Rock Island in the body of its amended complaint was not inadvertent. OMVI appeals.
 
 II.
 
 13
 OMVI contends that because the Trustee failed to notify it of the bar dates, its claim was not time-barred. OMVI also contends that it had an independent right to file its proof of claim, regardless of the bar dates, under Reorganization Court Order No. 678 and 28 U.S.C. Sec. 959(a).
 
 
 14
 The Rock Island retorts that OMVI did in fact receive actual notice of the September 27, 1983 hearing. Alternatively, OMVI received constructive notice through publication in the Wall Street Journal; because OMVI had led the Trustee to believe that it did not intend to pursue its claim against the Rock Island, OMVI was in effect an unknown creditor and constructive notice was therefore sufficient. The Rock Island further responds that the reorganization court did not abuse its discretion in refusing to permit OMVI to file late because OMVI did not make the requisite showing of excusable neglect. The Rock Island disputes OMVI's contention that it had a right under section 959(a) and Order No. 678 to file the claim. Finally, the Rock Island asks this court to find OMVI's claim barred by the doctrines of equitable estoppel and laches.
 
 A.
 
 15
 Although in its main brief on appeal OMVI argues that it was a known creditor entitled to receive actual notice of the December 22, 1983 bar date, in its reply brief it argues that the December bar date for filing proofs of claims did not cover its claim. Rather, because OMVI's claim was against the Trustee, the relevant bar date was April 12, 1984. The Rock Island responds that the April 12 bar date applied only to claims against the Trustee in his personal capacity, and that the December bar date applied to OMVI's claim.
 
 
 16
 The threshold issue which presents itself, then, is the appropriate characterization of OMVI's claim. In its class action suit, OMVI charged the defendant railroads with discriminating against minority-owned businesses in violation of, inter alia, 42 U.S.C. Secs. 1981 and 1982. OMVI further sued for breach of contract, claiming to be third party beneficiaries of agreements between defendants and the Secretary of Transportation and the Federal Railroad Administration under which defendants agreed to comply with the non-discrimination provisions of the Railroad Revitalization and Regulation Reform Act and the affirmative action requirements of the Department of Transportation as a condition of the receipt of substantial financial assistance from the federal government. The claim arose after the petition for reorganization had been filed and while the Trustee was operating the railroad. In its proof of claim, OMVI characterized its claim as an administrative claim.
 
 
 17
 There appears to be some authority for characterizing OMVI's claim as an administrative expense. In Reading Co. v. Brown, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), the receiver's negligence in conducting the debtor's business resulted in a fire which destroyed adjoining property. Fire loss claimants filed claims for administrative expenses in a sum exceeding the total assets of the estate. The Court rejected the receiver's argument that tort claims should not be treated as administrative expenses because first priority for them is not necessary to encourage third parties to deal with the insolvent business, because first priority would reduce the amount available to the general creditors, and because first priority would discourage general creditors from accepting arrangements. The Court stressed one "decisive, statutory objective: fairness to all persons having claims against an insolvent." 391 U.S. at 477, 88 S.Ct. at 1763. Not only did the Court hold that tort claims arising during an arrangement are actual and necessary expenses of that arrangement, but it refused to distinguish "within the class of torts committed by receivers while acting in furtherance of the business, between those 'integral' to the business and those that are not." Id. at 485, 88 S.Ct. at 1767. Administrative expenses are not limited "to costs without which rehabilitation would be impossible." Id. at 483, 88 S.Ct. at 1766.
 
 
 18
 Although Reading involved a Chapter XI proceeding, governed strictly by the statutory priorities fixed in section 64(a) of the Act, it relied upon the rules of priority developed in equity which are applicable to section 77 reorganizations. "It has long been the rule of equity receiverships that torts of the receivership create claims against the receivership itself; in those cases the statutory limitation to 'actual and necessary costs' is not involved, but the explicit recognition extended to tort claims in those cases weighs heavily in favor of considering them within the general category of costs and expenses." Reading, 391 U.S. at 483-84, 88 S.Ct. at 1765-66. In response to the dissent's suggestion that the only tort claims cognizable as administrative expenses in section 77 reorganizations were personal injury and wrongful death claims, 11 U.S.C. Sec. 205(n), the Court stated that congressional recognition of the tort claims of railroad employees as administrative expenses did not mean "that other tort claims are not chargeable against the receivership itself. Rather, as the United States concedes, 'tort claims arising during a receivership or reorganization period ... have generally been given the priority status of general administrative expenses.' " Reading, 391 U.S. at 483-84 n. 10, 88 S.Ct. at 1765-66 n. 10.[6]
 
 
 19
 But there is also authority for treating OMVI's claim as the claim of a general creditor, perhaps a tort or contract creditor. In the Matter of Chicago, Rock Island and Pacific Railroad Co., 756 F.2d 517, 519 (7th Cir.1985). In that case, the State of Iowa sought to have the cost of removing and/or maintaining highway railroad crossings and railroad bridges treated as an administrative expense. The court determined that Iowa was in effect seeking reimbursement for the cost of abating a prospective nuisance; its interest was akin to that of a tort or contract creditor--"an interest competitive with rather than beneficial to the interests of [the] creditors and therefore not entitled to the priority of an administrative expense." Id. at 520. We need not, however, definitively classify OMVI's claim because we find it time-barred no matter how it is characterized.
 
 
 20
 Two bar dates were set in this proceeding: one by operation of Bankruptcy Rule 8-401(b)(1); and the other by the reorganization court. Judge McGarr found the claim untimely under either bar date.
 
 
 21
 OMVI contends that its claim was governed by the April 12, 1984 bar date established in Order No. 669. Order No. 669 provides, in pertinent part, that:
 
 
 22
 Any person who asserts any claim or action of any nature against the Trustee, not in his capacity as such Trustee, but in his personal and individual capacity, based on any alleged act or failure to act on his part with respect to the operation of the Debtor's business, or with respect to any matter whatsoever related to the reorganization proceedings or the administration of the Debtor's estate or the liquidation of its assets prior to the date of this Order shall assert such claim or action no later than seven days prior to the hearing date [April 19, 1984] in writing and shall file same with the Court and serve the Trustee or be forever barred thereafter from asserting any such claim or action.
 
 
 23
 OMVI contends that the phrase "not in his capacity as such Trustee, but in his personal and individual capacity" applies only to claims based on any alleged act or omission by the Trustee "with respect to the operation of the Debtor's business." This, OMVI argues, is the only reasonable construction of the Order: If the phrase "in his personal capacity" is deemed to modify the entire paragraph, the second portion governing any claim against the Trustee "with respect to any matter whatsoever related to the reorganization proceeding or the administration of the Debtor's estate or the liquidation of its assets" is mere surplusage because "any claim that would fit under this language would also fit under the preceding portion [governing claims against the Trustee arising out of his operation of the debtor's business]."
 
 
 24
 We think the only reasonable interpretation of Order No. 669 is that the phrase "in his personal and individual capacity" modifies both types of claims referred to in the Order--those arising from any alleged act or omission by the Trustee with respect to his operation of the debtor's business and those arising from any alleged act or omission by the Trustee with respect to the reorganization proceeding, the administration of the estate or the liquidation of its assets. The parallelism in the Order's use of the phrase "with respect to" cannot be ignored. We also disagree that the claims in the former category are necessarily subsumed in the later category.
 
 
 25
 OMVI argues in the alternative that if Order No. 669 is construed to apply only to claims against the Trustee in his personal capacity, its claim qualifies as such. A trustee may be held personally liable only for a willful and deliberate violation of his fiduciary duties. Mosser v. Darrow, 341 U.S. 267, 272, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951); Sherr v. Winkler, 552 F.2d 1367, 1375 (10th Cir.1977) (construing Mosser ); see also 5 COLLIER ON BANKRUPTCY p 1106.01[b] (15th ed. 1985). Our examination of the complaint filed in the civil action reveals not even the slightest indication that the Trustee was sued in his personal capacity. Indeed, we think it safe to say that the Trustee's fiduciary duties did not extend beyond the Rock Island's existent creditors and shareholders.
 
 
 26
 Bankruptcy Rule 8-401(b)(1), which provided the other bar date in this proceeding, reads as follows:
 
 
 27
 A proof of claim may be filed at any time prior to approval of a plan except that the court may fix a different bar date for the filing of claims and give notice thereof as provided in subdivision (c) of this rule.
 
 
 28
 In this reorganization proceeding, then, a proof of claim could have been filed at any time prior to December 22, 1983, the date on which the plan was approved. OMVI contends that its claim was not a "claim" within the meaning of this rule.
 
 
 29
 Section 77(b) of the Bankruptcy Act defines "claims" broadly to include "debts, whether liquidated or unliquidated, securities ... liens, or other interests of whatever character." 11 U.S.C. Sec. 205(b). Bankruptcy Rule 8-701(6) provides the following definition:
 
 
 30
 "Claims" includes debts, securities other than stock, liens, and all other claims of whatever character against the debtor or its property whether or not provable under Section 63 of the Act and whether secured or unsecured, liquidated or unliquidated, fixed or contingent.
 
 
 31
 OMVI argues that claims against "the debtor or its property" are necessarily pre-petition claims; because its claim arose after the reorganization petition had been filed, it was not governed by the December 22 bar date. OMVI points out that the Bankruptcy Code limits the definition of "creditors" to holders of pre-petition claims against the debtor. 11 U.S.C. Sec. 101(9). The Rock Island responds that the Bankruptcy Act, which governs this proceeding, did not so limit the definition, and further that "creditors" are defined in the Act as "all holders of claims of whatever character against the debtor or its property...." 11 U.S.C. Sec. 205(b). The Rock Island submits that under these broad definitions, it cannot be said that post-petition, pre-approval claims against the debtor or its property are necessarily excluded from the reach of Bankruptcy Rule 8-401(b)(1).
 
 
 32
 But OMVI also contends that a claim against the Trustee is not a claim "against the debtor or its property." Implicit in the Rock Island's contrary assertion is the following proposition: since claims against a trustee for actions taken in his official capacity are claims against the estate, such claims are claims against the debtor or its property; any distinction would be meaningful only if claims against the debtor or its property and claims against the estate were satisfied from different sources.
 
 
 33
 Although there is some doubt whether claims arising during the trustee's operation of the debtor's business are "claims" within the meaning of Bankruptcy Rule 8-701(6) and section 77(b) of the Act, we also need not decide this issue. Assuming arguendo that OMVI's claim was governed by the December 22 bar date, we find OMVI was not entitled to actual notice of that bar date. True, known creditors are entitled to actual notice of the bar dates for filing claims. City of New York v. New York, New Haven & Hartford Railroad Co., 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953). Judge McGarr rejected OMVI's assertion that the Trustee had a duty to notify it of the bar date for filing a proof of claim, finding that OMVI was, in effect, not a creditor at all. He found that OMVI's conduct in the litigation of the class action lawsuit led the Trustee to believe that OMVI had abandoned its claim. Given our extremely limited standard of review of the factual and legal determinations of a reorganization court, New Haven Inclusion Cases, 399 U.S. 392, 435, 90 S.Ct. 2054, 2080, 26 L.Ed.2d 691 (1970), we cannot say that Judge McGarr's finding was erroneous.
 
 
 34
 OMVI was aware of the reorganization proceeding since at least June 18, 1979 when the Trustee moved to dismiss the complaint against him and the Rock Island on the ground that the reorganization court had exclusive jurisdiction of claims against the Rock Island and its Trustee. The Rock Island was deleted from the first amended complaint which was filed on June 17, 1980. No action was taken by OMVI when the Trustee failed to file a responsive pleading. On January 9, 1981, OMVI represented to the district court that it intended to dismiss the Rock Island from the action. In his December 9, 1983 opinion disposing of the motions filed by the defendant railroads, Judge Moran stated that the Rock Island had been dismissed from the action. OMVI did not hasten to inform Judge Moran that he was mistaken. Four months passed before OMVI sought leave to "facially amend" its complaint to include the "inadvertently omitted" Rock Island. Judge McGarr properly found that the omission was not inadvertent in light of OMVI's representation that the Rock Island was to be dismissed from the suit. In short, the Trustee could reasonably have believed that OMVI was no longer asserting a claim against him or the Rock Island.
 
 
 35
 Relying upon In re Intaco Puerto Rico, Inc., 494 F.2d 94, 96 (1st Cir.1974), OMVI claims the district court erred in finding that the Trustee could reasonably have believed that OMVI had abandoned its claim. In that case, the trustee, acting to preserve the debtor's assets, instituted a civil suit against a creditor for monies allegedly due under a contract. The creditor counterclaimed against the trustee for damages for an alleged breach of contract. Under threat of being held in contempt of court for violating the reorganization court's injunction against the commencement of suits against the debtor or its trustee, 11 U.S.C. Sec. 516(4), the creditor withdrew the counterclaim. No notice was thereafter sent to the creditor of the bar date for filing proofs of claims in the reorganization proceeding. One year after the confirmation of the plan, the creditor filed for the first time a proof of claim. The proof of claim was dismissed on the ground, inter alia, that it was untimely. On appeal, the court found the claim was not barred as untimely because the creditor, known to the trustee, had not received notice of the various reorganization developments. The court rejected the trustee's argument that because the creditor had withdrawn his counterclaim the trustee could have reasonably believed that the creditor no longer wanted to pursue its claim against the debtor.
 
 
 36
 Clearly, the only reason that the counterclaim was withdrawn was because it had been brought, in effect, in the wrong forum. Certainly, the Creditor's compelled decision to withdraw his claim could not have been reasonably interpreted by the Trustee as an abandonment of his stated position that the Debtor owed him money.
 
 
 37
 Id. at 96 n. 3.
 
 
 38
 OMVI now argues that it indicated its intention to voluntarily dismiss the Rock Island from the class action suit because the Trustee had argued that the reorganization proceeding was the appropriate forum. OMVI's stated intention to dismiss, unlike the creditor's dropping of the counterclaim in Intaco, was not compelled by a court determination that it was barred fom pursuing the civil action against the Rock Island. Indeed, OMVI argues on appeal that it had a right to pursue the civil action against the Trustee under 28 U.S.C. Sec. 959(a), a belief it clearly could have held when it determined to dismiss the Rock Island. The record indicates only that OMVI's decision was voluntary, in all likelihood the result of a determination by OMVI that pursuing its claim against the then cashless Rock Island with the possible attendant involvement in a lengthy and complex reorganization proceeding was unnecessary when three "deep pockets" could still be pursued in the civil action.
 
 
 39
 Under the circumstances, we find that OMVI was not entitled to actual notice of the September 27 approval hearing, which was continued until December 22 at which time the plan was approved. Constructive notice was sufficient. Therefore, assuming that the December 22 bar date governed OMVI's claim, that claim, filed on May 21, 1984, long after the plan had been approved, was time-barred.[7]
 
 
 40
 Assuming arguendo that OMVI's claim was an administrative expense not governed by the December 22 bar date for filing a proof of claim, see In re Parker, 15 B.R. 980 (Bank.Ct.E.D.Tenn.1981), aff'd, 21 B.R. 692 (E.D.Tenn.1982) (administrative expenses not subject to proof of claim filing requirement; request for payment sufficient), we find that its claim was governed by the "bar dates" of laches and equitable estoppel. At a minimum, administrative claims must be filed within a reasonable time after they arise. OMVI's claim arose by its own admission in 1977, but was not filed with the reorganization court until May 21, 1984. OMVI, then, deferred the filing of its proof of claim until the eve of consummation; Judge McGarr specifically found the delay inexcusable, a finding that is not clearly erroneous, and it cannot be seriously contended that the Trustee was not severely prejudiced as a result of the delay. Citation Cycle Co. v. Yorke, 693 F.2d 691, 695 (7th Cir.1982). The doctrine of laches bars this claim.
 
 
 41
 Alternatively, the doctrine of estoppel, which has been applied in the bankruptcy context, id., bars OMVI's claim. Estoppel arises "when one has so acted as to mislead another and the one thus misled has relied upon the action of the inducing party to his prejudice." Lebold v. Inland Steel Co., 125 F.2d 369, 375 (7th Cir.1941), cert. denied, 316 U.S. 675, 62 S.Ct. 1045, 86 L.Ed. 1749 (1942); see also Advanced Hydraulics, Inc. v. Otis Elevator Co., 525 F.2d 477, 479-80 (7th Cir.), cert. denied, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975). At the risk of repeating ourselves, Judge McGarr specifically found that OMVI had induced the Trustee to believe that it had abandoned its claim against the Rock Island. The Trustee's reliance on OMVI's representation led him to prepare and submit a plan of reorganization that did not include OMVI's $60 million claim. Judge McGarr also specifically found that the Trustee would be significantly prejudiced if OMVI were allowed to assert its claim on the eve of consummation. We agree. In conclusion, we find that OMVI simply sat too long on its claim.
 
 B.
 
 42
 Finally, OMVI contends that it need not have filed a proof of claim in the reorganization proceeding; rather, it had the right to pursue its action against the Trustee in the class action suit before Judge Moran. The source of OMVI's claimed right is 28 U.S.C. Sec. 959(a):
 
 
 43
 Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.
 
 
 44
 The Rock Island apparently concedes that OMVI's claim falls within section 959(a). In his official capacity, the Trustee operated the railroad for four and one-half years from March, 1975 until September, 1979. During this time, the alleged discrimination against minority vendors took place. The Rock Island's argument is that such a suit may be enjoined by the reorganization court in the sound exercise of its discretion. And, the Rock Island continues, no abuse of discretion occurred here.
 
 
 45
 In support of his motion for injunctive relief, the Trustee asserted that the reorganization court had exclusive jurisdiction of the Rock Island and its property; that Order No. 1 and Bankruptcy Rule 8-501(a) restrained and enjoined the commencement of suits against the Rock Island unless the reorganization court granted leave to do so; and that Order No. 678, the Consummation Order, reserved to the reorganization court exclusive jurisdiction of claims arising from acts of the Trustee. As far as we can tell from the transcript of the May 1, 1984 hearing on the Rock Island's motion for injunctive relief, Judge McGarr accepted the Rock Island's argument that the reorganization court had exclusive jurisdiction of claims against the Rock Island and its Trustee.
 
 
 46
 The reorganization court unquestionably had the authority under section 77(j) of the Act to enjoin suits against the Rock Island or its property to protect the estate from interference and to ensure its orderly administration. 11 U.S.C. Sec. 205(j). But this authority is limited in situations in which a trustee is carrying on business connected with the property entrusted to him. See Haberern v. Lehigh & N.E. Ry. Co., 554 F.2d 581, 585 (3d Cir.1977); Matter of Investors Funding Corp. of N.Y., 547 F.2d 13, 15 (2d Cir.1976); Diners Club, Inc. v. Bumb, 421 F.2d 396 (9th Cir.1970). Under section 959(a), a suit against a trustee arising out of his operation of the debtor's business may proceed despite a blanket injunction; however, in the exercise of sound discretion and upon a finding that "the action would embarass, burden, delay or otherwise impede the reorganization proceedings," Investors Funding, 547 F.2d at 16, a suit within the purview of section 959(a) may be enjoined, Diners Club, 421 F.2d at 401.
 
 
 47
 On April 11, 1984, when OMVI sought leave to amend its first amended complaint to include the Rock Island, the plan, which represented a compromise of many competing claims, had already been approved by the reorganization court and accepted by the creditors and shareholders. Notice of the confirmation hearing to be held on April 19, 1984 had been served and published. The plan was in fact confirmed on April 19, and a consummation order and final decree entered. We think it beyond peradventure that given the magnitude of OMVI's claim its attempt to proceed against the Rock Island and its Trustee at that late date could potentially unravel the entire reorganization.
 
 
 48
 True, the record does not reveal that Judge McGarr, prior to granting the injunction, made a specific finding that the suit OMVI desired to pursue against the Rock Island and its Trustee would interfere with the reorganization proceeding. But he did make this specific finding in his memorandum opinion and order refusing to permit OMVI to file its untimely claim in the reorganization proceeding.
 
 
 49
 Moreover, the court finds that the Trustee would be significantly prejudiced if this court permitted OMVI to file its sixty million dollar proof of claim at this late stage in these reorganization proceedings. The Trustee obviously believed that OMVI did not intend to pursue its action against the Rock Island. This belief was reasonable in light of OMVI's failure to proceed against the Rock Island in the case before Judge Moran and its failure to file a claim in this court. The Trustee presented a plan of reorganization for court approval and for approval by stockholders and creditors without consideration of OMVI's sixty million dollar claim. Recognition of that sixty million dollar claim at this late date would delay the scheduled consummation of the plan of reorganization.
 
 
 50
 OMVI contends that it was an abuse of discretion for the reorganization court to enjoin its suit, require it to file its claim in the reorganization proceeding, and then dismiss the proof of claim as untimely. We disagree. The equities in this case clearly support Judge McGarr's actions. We find no abuse of discretion in his decision to enjoin OMVI from pursuing its action against the Rock Island.
 
 
 51
 AFFIRMED.
 
 
 
 *
 The Honorable John W. Peck, Senior Circuit Judge of the Sixth Circuit, is sitting by designation
 
 
 [1]
 On July 12, 1984, this court granted the debtor's motion to amend the caption in this appeal to replace the Chicago, Rock Island and Pacific Railroad Company with the Chicago Pacific Corporation, the name of the reorganized corporation
 
 
 [2]
 Both the liquidation order and the abandonment order were affirmed by this court. In re Chicago, Rock Island & Pacific R.R. Co., 645 F.2d 77 (7th Cir.1980), cert. denied sub nom. RLEA v. Gibbons, 454 U.S. 823, 102 S.Ct. 110, 70 L.Ed.2d 96 (1981); In re Chicago, Rock Island & Pacific R.R. Co., 672 F.2d 920 (7th Cir.1981)
 
 
 [3]
 Paragraph 6 of the amended complaint listed as defendants and described the Illinois Central-Gulf Railroad, the Chicago and Northwestern Transportation Company, and the Chicago, Milwaukee, St. Paul and Pacific Railroad Company
 
 
 [4]
 The Notice stated in pertinent part as follows:
 Notice is further given, that the Honorable Frank J. McGarr, Chief Judge of the United States District Court and Presiding Judge for the above-captioned proceedings, has set Tuesday, the 27th day of September, 1983, at the hour of 2:00 p.m. in his Courtroom No. 2541, U.S. Courthouse, 219 S. Dearborn Street, Chicago, Illinois, as the time and place that a hearing on approval of the Plan shall be conducted before him....
 Notice is further given, that at said hearing (or any adjournment thereof without further notice), the Court shall approve the Plan if satisfied that the said Plan is fair and equitable, affords due recognition to the rights of creditors and stockholders and otherwise meets the requirements of Section 77 of the Bankruptcy Act, 11 U.S.C. Sec. 205 (1976). All parties on notice are invited to read all of the terms and provisions of the Plan and to participate in the set hearing or any adjournments thereof should they desire so to do.
 Notice is further given, that any and all parties in interest desiring to be heard at the set hearing, either in support of or in opposition to approval of the Plan, or who may desire to offer claims for equitable treatment, amendments, modifications or objections to the Plan, or to offer alternative plans for the Court's consideration, ... are required by order of the Court to file detailed and specific pleadings stating their position with fullest particularity, such written pleadings to be on file with the Court no later than September 13, 1983. Copies of such pleadings shall also be timely served upon the Trustee....
 
 
 [5]
 On August 4, 1983, the Notice and a copy of the Plan were mailed to the law firm of Tucker & Watson, One North LaSalle Street, Chicago, Illinois. Several members of that firm, including Robert Tucker, represented OMVI in the civil suit. The first amended complaint was submitted by, inter alia, Robert Tucker. The Rock Island argues that OMVI therefore received actual notice of the September 27 hearing. OMVI was permitted to supplement the record on appeal with certain portions of the bankruptcy docket which show that Robert Tucker filed an appearance in the reorganization proceedings on behalf of Connecticut Bank & Trust Company. OMVI argues that because Tucker & Watson was not representing OMVI in the reorganization proceedings, notice to the firm was not notice to OMVI. In light of our disposition of the notice issue, we need not remand this case for a determination whether OMVI received actual notice of the hearing
 
 
 [6]
 Reading has been applied beyond the field of torts. See In re Charlesbank Laundry, Inc., 755 F.2d 200, 202-03 (1st Cir.1985) (civil compensatory fine for violation of an injunction by debtor engaged in Chapter XI reorganization treated as an administrative expense under 11 U.S.C. Sec. 503(b), successor to section 64(a)); Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp., 443 F.2d 867, 874 (2d Cir.1971) (damages resulting from the infringement of the plaintiff's patent occurring while the trustee was operating the debtor's business would be treated as administrative expenses under section 64(a) of the Act); Diners Club, Inc. v. Bumb, 421 F.2d 396, 402 (9th Cir.1970) (claim arising from trustee's breach of contract treated as administrative expense)
 
 
 [7]
 OMVI does not press the argument that its failure to timely assert its claim in the reorganization proceeding was the result of excusable neglect. Suffice it to say that Judge McGarr's decision in this regard was not an abuse of discretion