In re KIDS CREEK PARTNERS, L.P., Debtor.

David R. Herzog, Trustee in Bankruptcy, and David A. Belofsky & Associates, P.C., Special Counsel for the Trustee, Appellants,

v.

Leighton Holdings, Ltd., Appellee.

Nos. 98 C 3852, 94 B 23947.

United States District Court, N.D. Illinois, Eastern Division.

March 17, 1999.

Neil Wolf and Janet Baer of Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, for Movant.

David A. Belofsky, Douglas Belofsky, and Steven Shamash, Chicago, IL, for Respondent.

David R. Herzog of Layfer Cohen & Handelsman, Chicago, IL, trustee.

## MEMORANDUM OPINION AND ORDER

KOCORAS, District Judge.

This matter comes before the court on appeal from a series of decisions of the United States Bankruptcy Court for the Northern District of Illinois. The Appellants assert that the Bankruptcy Court (1) erred in allowing the Appellee a superpriority administration claim for fees and expenses incurred in connection with an adversary proceeding brought against the Appellee by the Trustee in Bankruptcy and (2) erred in denying a motion by the Trustee in Bankruptcy and his Special Counsel to vacate and set aside the Bankruptcy Court's previous Order and Memorandum Opinion on the application of the Bankruptcy Court's official court reporter for payment of an administrative claim and erred in denying the Trustee in Bankruptcy's motion to stay enforcement of such order and opinion pending appeal. For the reasons set forth below, we affirm the Bankruptcy Court's decisions.

## BACKGROUND

The majority of the following facts come from our previous decision in this case, *In re Kids Creek Partners, L.P.*, 1997 WL 627652 (N.D.Ill.1997), addressing an earlier appeal in this matter. Any additional facts come from the briefs filed by the Appellants and the Appellee in the present appeal.

This appeal arises from a bankruptcy proceeding involving Kids Creek Partners, L.P. ("Kids Creek") and a related Adversary Proceeding instituted by David R. Herzog ("Herzog" or "Trustee"), the Trustee in Bankruptcy, and David A. Belofsky & Associates, P.C., Special Counsel to the Trustee ("Special Counsel") against

Leighton Holdings, Ltd. ("Leighton") and others.

Beginning in January 1993, Leighton and Kids Creek entered into various loan and security agreements. Pursuant to these agreements, Leighton advanced Kids Creek an aggregate amount of $1,692,740. In January 1994, Leighton ceased funding under these loans, alleging Kids Creek defaulted under the loan documents.

Kids Creek was in the business of attempting to develop or redevelop an approximately 450–acre parcel of real estate in Traverse City, Michigan that had once been the site of the Traverse City Regional Psychiatric Hospital ("the Commons Property"). On December 14, 1993, pursuant to an agreement between the parties, Kids Creek provided Leighton with a mortgage ("the Leighton Mortgage") on Kids Creek's interest in the Commons Property. The Leighton Mortgage, which the parties recorded on December 14, 1993, was secured by the Commons Property real estate, leasehold interests, rents, profits and revenues derived either directly or indirectly from the real estate, and certain personal property and equipment. The Leighton Mortgage provided that it would be released only upon payment of the entire indebtedness and strict performance of the other terms and conditions of the mortgage.

In November 1994, Kids Creek entered into an agreement to sell a 43–acre portion of the Commons Property ("the Munson Parcel") to Munson Healthcare Corporation ("Munson Healthcare") and Grand Traverse County, Michigan ("the County") (collectively "the Purchasers") for approximately $2,874,000. The purchase money for this transaction had been placed in escrow. The escrow money was to be returned to the Purchasers if the parties did not consummate the sale by December 31, 1994, the date upon which the County's authority to complete the purchase would expire.

On December 5, 1994, an involuntary bankruptcy petition was filed on Kids Creek's behalf in the United States Bankruptcy Court for the Northern District of Illinois. At the time of the filing of the bankruptcy petition, the only significant assets in Kids Creek's estate were (1) pursuant to a Redevelopment Agreement with Grand Traverse Commons Redevelopment Corporation ("Grand Traverse Redevelopment Corp."), certain options to purchase the Commons Property from Grand Traverse Redevelopment Corp. for nominal consideration and (2) pursuant to a master lease with Grand Traverse Redevelopment Corp., a leasehold interest in the Commons Property.

On December 14, 1994, the County and Munson presented an emergency motion for the appointment of a trustee to the Bankruptcy Court. The purpose of this emergency motion was to have an interim trustee appointed to complete the sale of the Munson Parcel. On December 15, 1994, the Bankruptcy Court granted the emergency motion and ordered the United States Trustee to appoint an interim trustee. On December 15, 1994, the United States Trustee appointed Herzog as interim trustee.

On or about December 19, 1994, the Trustee presented an emergency motion to employ counsel for trustee, in order to enable him to administer Kids Creek's assets and to close the sale of the Munson Parcel to Munson Healthcare and the County. The Bankruptcy Court authorized the Trustee to employ James W. Boyd of Traverse City, Michigan to close the sale of the Munson Parcel. The Bankruptcy Court also authorized the Trustee to employ the law firm of Layfer, Cohen & Handelsman, Ltd., and its individual attorneys David Herzog, Steven Shamash and David J. Wolf as "regular counsel."

Because the completion of the sale of the Munson Parcel would result in a significant infusion of cash into Kids Creek's estate, the Trustee sought to complete the sale on behalf of Kids Creek. Thus, on December 23, 1994, the Trustee filed a

motion to authorize him to acquire the Munson Parcel from the Grand Traverse Redevelopment Corp. and for authority to sell the Munson Property to Munson Healthcare and the County ("the Trustee's Motion to Authorize Sale"). Several obstacles remained to the completion of this sale, however. Leighton held both a security interest in all of Kids Creek's property, including the options and the Redevelopment Agreement between Kids Creek and Grand Traverse Redevelopment Corp., and a leasehold mortgage on all of Kids Creek's leased real estate. Grand Traverse Redevelopment Corp., the then-owner of the 450–acre Commons Property, had subordinated its fee interest to Leighton's leasehold mortgage.

Kids Creek was also in default under the Redevelopment Agreement and the Trustee was unable to cure the defaults. Grand Traverse Redevelopment Corp. was unwilling to waive the defaults and permit the Trustee to exercise the option and acquire the Munson Parcel, which Kids Creek would then sell to Munson Healthcare and the County as per their November 1994 agreement, unless the Trustee (1) agreed to terminate the Redevelopment Agreement and Master Lease and (2) obtained the release of Leighton's leasehold mortgage on the *entirety* of remaining acreage of the Commons Property, not simply the Munson Parcel.

In order to secure a release of Leighton's leasehold mortgage, the Trustee had to pay off in full Kids Creek's obligations to Leighton. There was a further complication, however, namely the Trustee did not want to pay Leighton. The Trustee suspected that Kids Creek's estate might have a cause of action against Leighton to invalidate Leighton's security interest and leasehold mortgage in the Commons Property. The Trustee was apparently concerned about whether Leighton would move off-shore any funds Kids Creek paid Leighton and that such funds would thereafter be beyond the jurisdiction of the Trustee and the Bankruptcy Court. As

noted by the Bankruptcy Court, the Trustee was "in a box" from which he could escape only by making a deal with Leighton.

On December 30, 1994, one day before the County's authority to purchase the Munson Property was set to expire, the Bankruptcy Court held a hearing on the Trustee's Motion to Authorize Sale. At this hearing, the parties presented to the court the respective positions of all involved, including the Trustee, Leighton, Munson Healthcare, the County and the Grand Traverse Redevelopment Corp. At this time, Leighton was not willing to release its lien on the entire Commons Property without some assurances that its interests would be protected. As noted above, the Trustee did not want to consent to the repayment of Leighton's loans in full for fear that any money he paid Leighton would be moved off-shore.

At the start of the hearing on the Trustee's Motion to Authorize Sale, the parties requested a recess so they could attempt to negotiate and draft an agreed order satisfactory to all sides. The Trustee and Leighton thereafter entered into a handwritten agreement that authorized the Trustee to exercise Kids Creek's option to acquire the Munson Parcel from Grand Traverse Redevelopment Corp. and to sell that parcel to Munson and the County free and clear of any liens or encumbrances, including Leighton's lien. In exchange for Leighton's acquiescence to the sale, the Trustee agreed to pay Leighton the full amount of its claims. The handwritten agreement between the Trustee and Leighton, which the Bankruptcy Court explicitly incorporated into its December 30, 1994 Agreed Order, stated as follows:

> It is further ordered that, upon closing of the transactions authorized by this order, secured creditor Leighton Holdings, Ltd. will immediately be paid the full principal amount of its claim, all accrued and unpaid interest, all attorneys fees, and all costs which it has incurred as of the date of this closing.

Such payment will be without prejudice to any claims of any party as of the date of the payment. As of the time of such payment, [Leighton] will obtain a letter of credit issued by a bank reasonably acceptable to the Trustee in favor of the Trustee in the amount of $1.25 million to expire in 45 days. If, within 45 days after issuance of said letter of credit, the Trustee does not initiate a lawsuit against [Leighton], [Leighton] will have an allowed super priority administrative claim against the estate, prior to the claim of any holder of a claim otherwise allowable under Section 507(a) of the Bankruptcy Code, in the amount of [Leighton's] letter of credit fees, additional attorneys fees, and costs. The Trustee's failure to initiate such lawsuit against [Leighton] within such 45–day period shall constitute a waiver and release of any and all claims the estate might have against [Leighton], Lakeside Partners, and Cecil McNab, arising out of the secured loan transactions which are the subject of [Leighton's] claim. If the Trustee files a lawsuit against [Leighton] within such 45–day period, the letter of credit will be extended or renewed as necessary to secure the Trustee's asserted claim until such claim is resolved (or the letter of credit is not so extended or renewed, then the Trustee may draw on the letter of credit, retain the proceeds of such drawing in escrow, and apply the proceeds as determined by such lawsuit or an agreement of the parties). In the latter event, [Leighton] shall have a first priority lien against such letter of credit proceeds in the amount ultimately determined to be appropriate.

If the Trustee initiates such a lawsuit and [Leighton] prevails, the [Leighton] shall have an allowed superpriority administrative claim, prior to the claim of any holder of a claim otherwise allowable under Section 507(a) of the Bankruptcy Code, for (a) all costs and fees associated with the issuance of the letter of credit; (b) all legal fees and expenses incurred in the defense of the lawsuit; (c) all other fees and expenses reasonably incurred in connection with the collection of [Leighton's] claim; and (d) any and all funds previously drawn by the Trustee under the letter of credit, together with interest in [Leighton's] contractual, default rate.

*In re Kids Creek Partners, L.P.*, No. 94 B 23947 (Bankr.N.D.Ill. December 30, 1994) (Schmetterer, J.).

As the language quoted above illustrates, to provide adequate assurance and protection to the Trustee and Leighton regarding the anticipated litigation between them, the following provisions were included in the Trustee/Leighton agreement (and the December 30, 1994 Agreed Order). First, Leighton was required to furnish a $1,250,000 letter of credit from which the Trustee would be repaid if he prevailed in a lawsuit against Leighton on behalf of Kids Creek's estate. The agreement allowed the Trustee 45 days in which to commence litigation against Leighton, with the failure to timely initiate proceedings to be construed as a waiver of all claims. Second, the December 30, 1994 Agreed Order provided that, if Leighton were to prevail in any lawsuit brought against it on behalf of Kids Creek's estate, Leighton would be allowed a superpriority administrative claim for, *inter alia*, all costs, fees and expenses associated with (1) the issuance of the $1,250,000 letter of credit, (2) its defense of any lawsuit brought on behalf of Kids Creek's estate and (3) the collection of Leighton's claim against Kids Creek. The parties agreed that Leighton's claim would be prior to any others asserted under § 507(a) of the Bankruptcy Code.

In compliance with the December 30, 1994 Agreed Order, the Trustee sold Kids Creek's interest in the Munson Parcel for approximately $2,800,000. On January 18, 1995, the Trustee paid Leighton $2,098,-496.41 out of these proceeds. On February 15, 1995, within the 45–day period

specified in the Agreed Order, the Trustee filed an Adversary Complaint against Leighton and others seeking equitable subordination of Leighton's claims, recharacterization of Leighton's "loans" as contributions in equity, breach of contract and other relief.

On August 21, 1995, more than eight months after the entry of the December 30, 1994 Agreed Order, the Trustee was granted leave to employ the law firm of David Belofsky & Associates, including attorney Steven Shamash (who previously served as "regular counsel" to the Trustee) as special counsel ("Special Counsel") for the purpose of representing the Trustee in the Adversary Proceeding.

In February 1996, VOA Associates, another Kids Creek creditor, filed a motion to set aside the court's December 30, 1994 Agreed Order. At a subsequent hearing on the motion, VOA Associates notified the Bankruptcy Court that it never received notice of the December 30, 1994 Agreed Order granting Leighton a superpriority administrative claim in the Kids Creek estate.

Based upon VOA Associates' representation that it never received notice of the December 30, 1994 hearing, the Bankruptcy Court held an evidentiary hearing on February 15, 1996 to address VOA Associates' objection to the validity of the Agreed Order and, in particular, the propriety of Leighton's superpriority claim. On March 7, 1996, the Bankruptcy Court rejected VOA Associates' motion and upheld that validity of Leighton's superpriority claim. *See In re Kids Creek Partners, L.P.*, No. 94 B 23947 (Bankr.N.D.Ill. March 7, 1996) (Schmetterer, J.). No party appealed the March 7 Order denying VOA Associates' motion.

After the Bankruptcy Court denied summary judgment motions filed by Leighton and other defendants in the Adversary Proceeding, Special Counsel applied for compensation in the amount of $53,670.00 for fees and $3,180.65 for reimbursement of costs. Leighton objected to this application on several grounds, including that payment of any compensation to Special Counsel would impair a security interest Leighton claimed it had in the entirety of Kids Creek's bankruptcy estate.

On November 4, 1996, the Bankruptcy Court held an evidentiary hearing on Special Counsel's fee application. At the time of the hearing, Kids Creek's estate was represented to have at least $325,000 in cash. At this hearing, Leighton's counsel represented that they had expended nearly $400,000 in legal fees and costs on the Adversary Proceeding through September 30, 1996. The Bankruptcy Court also concluded that, if the Trustee were to prevail in the Adversary Proceeding against Leighton, the benefit to Kids Creek's estate would be between $1,250,000 and $2,100,000.

At the November 4, 1996 hearing, the Bankruptcy Court entered from the bench an Order allowing Special Counsel's fee application, but authorizing payment of only $25,000 of the fees and $3,180.65 of the costs. The Bankruptcy Court ruled that Leighton expressly released its mortgage upon receipt of the Trustee's payment of Kids Creek's obligations to Leighton. The court did, however, find that Leighton possessed a U.C.C. security interest in Kids Creek's personal property, which it found attached to the proceeds of the sale of the Munson Parcel when Kids Creek's estate acquired such proceeds. Because the court found Leighton possessed a secured interest in the estate assets, it held that it would not grant Special Counsel's fee request in full.

The Trustee moved for reconsideration of the Bankruptcy Court's November 4 ruling, arguing that § 552 of the Bankruptcy Code prevented the attachment of Leighton's security interest to any property acquired by Kids Creek's estate after commencement of the bankruptcy proceedings. On April 23, 1997, the Bankruptcy Court found that Leighton did not in fact possess a security interest in the land sale

proceeds. The court thus authorized the payment of the remaining $28,670 in fees to Special Counsel.

Leighton then moved to alter and amend the Bankruptcy Court's April 23 Order, arguing that payment of the balance due under the fee application effectively deprived Leighton of its superpriority claim under the December 30, 1994 Agreed Order. In an Order dated May 7, 1997, the Bankruptcy Court denied Leighton's motion and adjudicated Leighton to have no secured claim in the assets of Kids Creek's estate.

Leighton appealed the May 7, 1997 Order to this court, as well as the Bankruptcy Court's authorization of interim compensation to Special Counsel. Shortly thereafter, Leighton also appealed a subsequent Order of the Bankruptcy Court authorizing payment of $5,000.00 to consulting experts whom the Trustee retained for the prosecution of the Adversary Proceeding. On October 1, 1997, we affirmed the Bankruptcy Court's ruling, with instructions on how to further proceed. *See In re Kids Creek Partners, L.P.*, 1997 WL 627652 (N.D.Ill.1997). In our opinion, we held that the Bankruptcy Court properly interpreted § 552(a) of the Bankruptcy Code when it found that Leighton had no secured claim in the funds of Kids Creek's estate. *Id.* at *5–6. We also noted that allowing the claims of Special Counsel to take priority over Leighton's superpriority claims might eviscerate the intentions of the parties when they entered the December 30, 1994 Agreed Order. *Id.* at *6. Because we found, however, that Leighton's superpriority claim was contingent upon it prevailing in the Adversary Proceeding, we held that the Bankruptcy Court did not err when it granted Special Counsel's fee request because, at that time, Leighton's success in the Adversary Proceeding was far from a certainty. *Id.* at *7. Based upon our determination that "a final resolution of the Adversary Proceeding in Leighton's favor appear[ed] imminent," we instructed the Bankruptcy

Court that any further grant of fees to Special Counsel would likely constitute an abuse of discretion requiring reversal on appeal. *Id.*

On June 12, 1997, the Bankruptcy Court entered a sanction against Cecil R. McNab, one of the other defendants in the Adversary Proceedings, in the amount of $2500.00 as a discovery sanction. On August 19, 1997, the Bankruptcy Court authorized the Trustee to disburse to Special Counsel the $2500.00 discovery sanction the court previously assessed against McNab. This $2500.00 fee was in partial satisfaction of Special Counsel's Second Application for Interim Compensation. On August 26, 1997, the Trustee filed an application for authorization to pay Jackleen De Fini ("De Fini"), the Bankruptcy Court's official court reporter, the amount of $1390.00 as an administrative expense. The Trustee incurred the expense for De Fini's preparation of transcripts of the Adversary Proceeding.

On September 10, 1997, prior to our earlier ruling in this matter but almost three years after the December 30, 1994 Agreed Order, Leighton filed with the Bankruptcy Court its application for allowance and payment of its superpriority claim pursuant to the Bankruptcy Court's December 30, 1994 Order. Leighton's application sought $1,112,937.00 in fees and $544,865.31 in expense reimbursement. The Trustee and Special Counsel objected to Leighton's application for payment of a superpriority claim on numerous grounds, including that such claim was not authorized by the Bankruptcy Code, that Leighton's fees were unreasonable and that Leighton breached the terms of the Bankruptcy Code's December 30, 1994 Order by allowing the letter of credit to lapse before Leighton "prevailed" in the Adversary Proceeding. On September 23, 1997, the Bankruptcy Court issued its findings of fact and conclusions of law granting Leighton's motion for judgment on partial findings in the Adversary Proceeding. *See In re Kids Creek Partners, L.P.*, 212 B.R. 898

(Bankr.N.D.Ill.1997). On October 1, 1997, the Bankruptcy Court entered judgment in favor of Leighton on all counts of the Trustee's adversary complaint.

On January 13, 1998, the Bankruptcy Court held a hearing on Leighton's application for a superpriority claim and the objections made by the Trustee and Special Counsel. The parties stipulated to the facts and to exhibits admitted into evidence at the hearing. On April 24, 1998, the Bankruptcy Court entered two memorandum Opinions and Orders. The first Order granted Leighton's application for a superpriority claim and the second analyzed the Trustee's application to pay De Fini as an administrative expense. In its Opinion regarding Leighton's superpriority claim, the Bankruptcy Court held that the contingent superpriority granted to Leighton in the court's December 30, 1994 Agreed Order was appropriate "adequate protection" of Leighton's secured claim under sections 363 and 507 of the Bankruptcy Code. *See In re Kids Creek Partners, L.P.*, 220 B.R. 963, 970 (Bankr.N.D.Ill. 1998). The Bankruptcy Court also ruled that neither the Trustee nor Special Counsel could attack the validity of the court's December 30, 1994 grant of a superpriority claim to Leighton under the doctrines of "mend the hold," judicial estoppel and equitable estoppel. *Id.* at 971–973. The court also rejected the arguments that Leighton breached the agreement contained in the December 30, 1994 Agreed Order and that Leighton's counsel had a conflict of interest that precluded compensation from Kids Creek's estate. *Id.* at 973–975, 978. In conclusion, the Bankruptcy Court held:

> Leighton's application for administrative superpriority will be allowed and ordered to be paid out of all sums currently in the estate subject to its claim. Beyond doubt, the fees and expenses sought for such work representing Leighton in areas provided by the

agreed Order far exceed such amounts available for payment, as amply demonstrated by uncontested parts of the Application.

*Id.* at 978. The Bankruptcy Court deferred ruling on Leighton's request to order the Trustee and Special Counsel to disgorge professional fees they had been previously paid out of Kids Creek's estate, stating "In this case, it cannot yet be determined whether disgorgement of professional fees from Special Counsel or from the Trustee is appropriate, and further briefing will be required." *Id.*

Although it deferred its ruling on Leighton's request for disgorgement to satisfy Leighton's superpriority claims, the Bankruptcy Court ordered Special Counsel to disgorge the $2500.00 sanction entered against Cecil R. McNab in the Adversary Proceeding to satisfy De Fini's unpaid bill of $1390.00 for transcripts. *See In re Kids Creek Partners*, 219 B.R. 1020 (Bankr. N.D.Ill.1998). The Bankruptcy Court held that it previously ordered the payment of the $2500.00 in partial consideration of Special Counsel's Second Application for Interim Compensation and, for this reason, such payment was reviewable and revisable by the court. *Id.* at 1022. Specifically, the court held: "... the $2500 paid to Special Counsel on August 19, 1997, was based on allowance of interim fees. As such, it was not final and remains subject to subsequent review and subject to possible disgorgement." *Id.*

The Trustee and Special Counsel thereafter moved the Bankruptcy Court to vacate its Order requiring Special Counsel to disgorge the $2500.00 McNab sanction, or alternatively, to stay enforcement of that Order, arguing that the Bankruptcy Court had no jurisdiction to enter the Order because the sanction was entered in the Adversary Proceeding, which had been on appeal in the Northern District of Illinois for months.[1] They also argued that the McNab sanction award was not, and never

---

1. *See Herzog v. Leighton Holdings, et al.,* No. 97 C 8878 (N.D.Ill.1997), filed December 23, 1997, currently pending before our colleague, the Honorable John F. Grady.

was, the property of the estate. On May 13, 1998, the Bankruptcy Court denied the Trustee's and Special Counsel's motion to vacate or stay. On May 18, 1998, the Bankruptcy Court entered an Order allowing Leighton's superpriority claim and directing its immediate payment. On May 22, 1998, the Trustee and Special Counsel filed their Notice of Appeal asserting that the Bankruptcy Court (1) erred in allowing Leighton a superpriority administration claim for fees and expenses incurred in connection with the Adversary Proceeding brought against it by the Trustee and (2) erred in denying the Trustee's and Special Counsel's motion to vacate and set aside its previous Order and Memorandum Opinion on De Fini's application for payment of an administrative claim and erred in denying their motion to stay enforcement of such order and opinion pending appeal. For the reasons set forth below, we affirm the decision of the Bankruptcy Court.

## STANDARD OF REVIEW

In reviewing a decision of the bankruptcy court, the court's findings of fact are upheld unless clearly erroneous, its determinations of witness credibility are given due regard and its legal conclusions are reviewed *de novo. In re Marrs–Winn Co., Inc.,* 103 F.3d 584, 589 (7th Cir.1996) (citing Fed.R.Bankr.P. 8013). With these standards in mind, we turn to the Trustee's and Special Counsel's present appeal.

## DISCUSSION

As noted above, the Trustee and Special Counsel raise two issues on appeal, namely, (1) whether the Bankruptcy Court erred in allowing Leighton a superpriority administration claim for fees and expenses incurred in connection with the Adversary Proceeding and (2) whether the Bankruptcy Court erred in denying the Trustee's and Special Counsel's motion to vacate and set aside its previous Order and Memorandum Opinion on De Fini's application for payment of an administrative claim and

erred in denying their motion to stay enforcement of such order and opinion pending appeal. Before we turn to each of these issue, we first must address a jurisdictional issue raised by Leighton.

## A. Whether We Have Jurisdiction Over the Present Appeal

It is undisputed that to have a valid appeal of a decision of the Bankruptcy Court, a party must file a timely notice of appeal. Fed.R.Bankr.P. 8001(a). It is also undisputed that the notice of appeal must be filed within 10 days of the entry of the judgment, order or decree appealed from. Fed.R.Bankr.P. 8002(a). In this matter, Leighton claims the present appeal is in reality an appeal of the Bankruptcy Court's December 30, 1994 Agreed Order in which the court granted Leighton a superpriority claim. For this reason, Leighton argues, we lack jurisdiction over this appeal because the Trustee and Special Counsel filed their appeal May 22, 1998, almost three and a half years after entry of the December 30, 1994 Order. We disagree.

As we noted in our previous decision in this matter, until the Bankruptcy Court ultimately ruled in favor of Leighton in the Adversary Proceeding, Leighton's superpriority claim was "contingent and a mere possibility, not something which was certain when the [Bankruptcy Court] exercised its discretion." *In re Kids Creek Partners, L.P.,* 1997 WL 627652, at *7. Leighton's superpriority claim only became a certainty on May 18, 1998, when the Bankruptcy Court entered its Order allowing the superpriority claim and directing its immediate payment. We think a legitimate question existed for some time after December 30, 1994 as to whether Leighton would be entitled to any proceeds of the Kids Creek's estate. Our belief is supported by the fact that the Bankruptcy Court required Leighton to post a $1,250,000 bond as security against an adverse judgment in the Adversary Proceeding. Only on May 18, 1998, after

the Bankruptcy Court ultimately determined Leighton's right to a superpriority claim in the Kids Creek estate, did the clock begin to tick on any appeal of such a decision. *See In re Forty–Eight Insulations, Inc.*, 115 F.3d 1294, 1297 (7th Cir. 1997) ("Under [28 U.S.C. § 158, that statute governing the review of cases initiated in the bankruptcy court], we treat as final those orders that ultimately determine a creditor's position in the bankruptcy proceeding, even though the administration of the debtor's estate continues." (citations omitted)). For this reason, we find the Trustee and Special Counsel timely filed the present appeal on May 22, 1998 and we reject Leighton's jurisdictional challenge.

## B. Whether the Trustee and Special Counsel Are Procedurally Barred From Challenging Leighton's Superpriority Claim in this Forum

Before we address the propriety of Leighton's superpriority claim, we must first determine whether the Trustee and Special Counsel are procedurally barred from challenging the superpriority claim. In its underlying opinion, the Bankruptcy Court held that the Trustee and Special Counsel were barred from challenging the validity of Leighton's superpriority claim by doctrines of "mend the hold," equitable estoppel and judicial estoppel. *See In re Kids Creek Partners, L.P.*, 220 B.R. at 971–973. We agree with the Bankruptcy Court's analysis and find that the Trustee and Special Counsel are procedurally barred from challenging the propriety of Leighton's superpriority administrative claim.

### 1. Equitable Estoppel

■ The traditional elements of equitable estoppel are: (1) the party to be estopped made a representation; (2) a second party relied upon that representation; and (3) the second party changed its position based upon the representation. *Federal Deposit Ins. Corp. v. Rayman*, 117 F.3d 994, 1000 (7th Cir.1997); *Kennedy v.*

*United States*, 965 F.2d 413, 417 (7th Cir. 1992); *see also In re Vick*, 75 B.R. 248, 249 (Bankr.E.D.Va.1987). We think each of these elements is present in this matter, thereby estopping both the Trustee and Special Counsel from challenging the Bankruptcy Court's grant of a superpriority claim to Leighton.

With respect to element #1, the Bankruptcy Court found that "the Trustee represented to Leighton that he had the authority to give Leighton a superpriority for attorneys fees and costs surrounding [Leighton's $1.25 million letter of credit] should Leighton prevail in the adversary [proceeding]." *In re Kids Creek Partners, L.P.*, 220 B.R. at 972. Notwithstanding the arguments of the Trustee and Special Counsel, we think the Trustee represented to Leighton on December 30, 1994 that he had the authority to grant Leighton a superpriority claim in the Kids Creek estate.

As noted above, *see supra*, with the clock ticking on the sale of the Munson Parcel, the Trustee and Leighton excused themselves from the December 30, 1994 hearing before the Bankruptcy Court and negotiated the agreement whereby Leighton obtained its superpriority claim. The Bankruptcy Court immediately thereafter incorporated the terms of the Trustee/Leighton agreement into its December 30 Order. Faced with the mounting pressure of losing approximately $2,800,000 in cash for the benefit of the Kids Creek estate, the Trustee and Leighton apparently agreed that their December 30 agreement, and the subsequent Agreed Order, constituted a benefit to the estate. We cannot say, based upon the totality of the circumstances, that the Bankruptcy Court abused its discretion when it found the Trustee represented to Leighton that he had the authority to grant Leighton a superpriority claim. *See In re C & S Grain Co., Inc.*, 47 F.3d 233, 238 (7th Cir.1995).

We also think element no. 2 and element no. 3 of equitable estoppel are present here. We think it quite clear that Leigh-

ton relied upon the Trustee's representation. The evidence demonstrates that Leighton objected to the sale of the Munson Parcel and required something, its superpriority claim, in return for its acquiescence to the sale. Furthermore, Leighton clearly changed its position by releasing its mortgage on the entirety of the Commons Property in return for its superpriority claim. We think the evidence establishes the applicability of the doctrine of equitable estoppel to the present matter.

We are supported in our decision by the Seventh Circuit's opinion in *Citation Cycle Co., Inc. v. Yorke*, 693 F.2d 691 (7th Cir. 1982). In *Citation*, after an involuntary bankruptcy was filed against the debtor, the debtor and its creditors entered into a stipulation that put a single issue before the bankruptcy court: whether the judgment lien of one of its creditors, Finney, arose when a writ of execution was delivered to the sheriff or whether it arose when there was an actual attempt to levy on the debtor's property. *Id.* at 693. The parties represented to the court that if it was the former, then the debtor would be adjudged a bankrupt, but if it was the latter, the debtor could not be deemed a bankrupt. *Id.* The bankruptcy court found that the lien arose upon delivery to the sheriff, and for this reason, deemed the debtor a bankrupt. *Id.*

Three years later, in the middle of an adversary proceeding initiated by the debtor's trustee, the debtor filed a motion to vacate the bankruptcy adjudication. *Id.* at 694. The debtor argued that the attorneys who filed the involuntary bankruptcy petition against it were acting without authorization from their clients. *Id.* After the bankruptcy court denied the debtor's motion to vacate, and several collateral attacks on the court's ruling were denied, the debtor appealed to the district court. When the district court dismissed the debtor's appeal, the debtor appealed to the Seventh Circuit.

The Seventh Circuit upheld the district court's dismissal of the debtor's appeal, holding "this is a textbook case for applying the doctrines of estoppel and laches, which are particularly appropriate in the context of bankruptcy proceedings." *Id.* at 695. The Seventh Circuit held that the debtor's stipulation to the bankruptcy court estopped it from raising new issues later. *Id.* Of particular import to the court was that the debtor actively participated in the bankruptcy proceedings for three years "without ever questioning the decision that [it] was a bankrupt." *Id.* at 696. The Seventh Circuit concluded by holding "[t]he creditors were entitled to rely, and clearly did rely, on the fact that, however much this litigation resembled trench warfare, at least the one stipulated issue decided by [the bankruptcy court] ... was settled." *Id.*

We find the *Citation* decision very instructive in the present matter. On December 30, 1994, the Trustee entered into an agreement with Leighton which clearly induced Leighton to release its mortgage in the entirety of the Commons Property. As the Bankruptcy Court noted throughout the proceedings below, Leighton was under no obligation to release its mortgage and did so only after the Trustee agreed to grant it a superpriority claim in the Kids Creek estate. Furthermore, the Trustee (and Special Counsel) participated in several hearings at which the parties addressed Leighton's superpriority claim, including the March 1996 hearing in which VOA Associates directly challenged the validity of Leighton's claim. At the conclusion of the VOA hearing, the Bankruptcy Court expressly found Leighton held "a superpriority which is authorized under the Bankruptcy Code." *In re Kids Creek Partners, L.P.*, 1994 B 23947 (Bankr. N.D.Ill. March 7, 1996) (Schmetterer, J.). Faced with this express finding of the Bankruptcy Court, the Trustee waited an additional year and a half to lodge its first objection to Leighton's superpriority claim. The record demonstrates that for almost three years following the entry of the Bankruptcy Court's December 30, 1994

Order, neither the Trustee nor Special Counsel ever questioned or challenged Leighton's superpriority claim. We think Leighton, like the *Citation* creditors, relied upon the existence and validity of its superpriority claim and participated in the three year long Adversary Proceeding with the superpriority claim as the light at the end of its tunnel.

The record indicates that the Trustee and Special Counsel first objected to Leighton's superpriority claim in September 1997, when Leighton applied for payment of its claim. This was almost three years after the December 30, 1994 Agreed Order. We think it would be patently unfair to allow such an objection. If *Citation* represented a "textbook case" for applying the doctrine of equitable estoppel in a bankruptcy proceeding, the present matter toes the "textbook" line. We, therefore, find the Trustee and Special Counsel are barred by the doctrine of equitable estoppel from challenging Leighton's superpriority claim in the Kids Creek estate.

Special Counsel argues that because it was not appointed until August 21, 1995, eight months after the entry of the Bankruptcy Court's December 30, 1994 Agreed Order, it cannot be estopped from challenging the propriety of Leighton's superpriority claim. We reject this argument for several reasons. First, even if we use August 21, 1995 as a measuring stick, Special Counsel waited over two years, until September 1997, to initially challenge Leighton's superpriority claim. During this period, Special Counsel attended several hearings, including the March 1996 hearing on VOA Associates' challenge to Leighton's superpriority claim, and never once raised an objection to Leighton's claim. Second, attorney Steven Shamash, who served as "regular

counsel" to the Trustee (then Interim Trustee) at the December 30, 1994 hearing on the Trustee's Motion to Authorize Sale, also serves as Special Counsel at the present time. Shamash clearly was on notice of Leighton's superpriority claim when he was "first" hired as Special Counsel in August 1995, and, as noted above, sat on his hands for over two years before voicing any objection to Leighton's claim. For these reasons, we find Special Counsel barred by the doctrine of equitable estoppel from now challenging the propriety of Leighton's superpriority claim.

### 2. The "Mend the Hold" Doctrine

■ The Bankruptcy Court also found the "mend the hold" doctrine barred the Trustee and Special Counsel from challenging Leighton's superpriority claim in the Kids Creek estate. We agree.[2]

■ The "mend the hold" doctrine provides that a party to a contract cannot take inconsistent positions in litigation over the contract. *See Horwitz–Matthews, Inc. v. City of Chicago,* 78 F.3d 1248, 1251 (7th Cir.1996) (citations omitted); *C.L. Maddox, Inc. v. Coalfield Services, Inc.,* 51 F.3d 76, 79 (7th Cir.1995) (citing *Harbor Ins. Co. v. Continental Bank Corp.,* 922 F.2d 357, 362–365 (7th Cir.1990)). The "mend the hold" doctrine extends to situations where a position taken in prior dealings with a party to a contract is inconsistent with a position taken during litigation. *See Raffel v. Medallion Kitchens of Minnesota, Inc.,* 1996 WL 675787, *4–5 (N.D.Ill.1996) (citing *Harbor Ins. Co.,* 922 F.2d at 364), *aff'd on other grounds,* 139 F.3d 1142 (7th Cir.1998).

In *Raffel,* the district court relied upon the "mend the hold" doctrine to bar the plaintiff from altering its assertion of rights under a lease. For one full year of

**2.** We reject Special Counsel's argument that because it was not a signatory to the December 30, 1994 Agreed Order, it cannot be barred from challenging Leighton's superpriority claim. We disagree. On August 21, 1995, the Bankruptcy Court authorized the Trustee to employ Special Counsel for the purpose of representing the Trustee in the Adversary Proceeding. Special Counsel's authority in this matter arises derivatively through the Trustee. Special Counsel has no basis, independent of the Trustee, to challenge Leighton's superpriority claim. *See In the Matter of Carbide Cutoff, Inc.,* 703 F.2d 259, 262–263 (7th Cir.1983).

**422**

litigation, during which the parties actively disputed the defendant's obligation under the lease, the plaintiff claimed the defendant owed him $15,000 under the lease. *Raffel*, 1996 WL 675787, at *4. Only later did the plaintiff "suddenly announce" his claim for $81,000. *Id.*

■ In the present matter, the Bankruptcy Court properly held that because the Bankruptcy Court's December 30 Order was an Agreed Order, incorporating the handwritten agreement between the Trustee and Leighton, the Order was "in the nature of a contract and general principles of contract law [including the 'mend the hold' doctrine] may apply." *In re Kids Creek Partners, L.P.*, 220 B.R. at 971 (citing *Martin v. Davies*, 917 F.2d 336, 339 (7th Cir.1990), *cert. denied*, 501 U.S. 1208, 111 S.Ct. 2805, 115 L.Ed.2d 978 (1991)). As noted above, the Trustee sat on his hands for almost three full years and never once challenged Leighton's right to a superpriority administrative claim in the Kids Creek estate. The Trustee's silence endured, even during the March 1996 hearing on VOA Associates' challenge to Leighton's superpriority claim. We think such conduct violates the "mend the hold" doctrine. For this additional reason, we find the Trustee is barred from challenging Leighton's superpriority claim.

## C. The Disgorgement of the Sanction Award

The Trustee and Special Counsel argue the Bankruptcy Court also erred in denying their motion to vacate and set aside its previous Order and Memorandum Opinion on De Fini's application for payment of an administrative claim and erred in denying their motion to stay enforcement of such order and opinion pending appeal. We disagree.

As set forth more fully above, *see supra*, on April 24, 1998, the Bankruptcy Court ordered Special Counsel to disgorge the $2500.00 sanction previously entered against Cecil R. McNab in the Adversary Proceeding. *See In re Kids Creek Partners, L.P.*, 219 B.R. 1020 (Bankr.N.D.Ill.

1998). The Bankruptcy Court ordered Special Counsel to distribute the funds to De Fini, in satisfaction of her unpaid $1390.00 transcript bill, or pro rata among her and other administrative creditors. *Id.*

In reaching its decision, the Bankruptcy Court stated: "... [the Kids Creek] estate is not administratively insolvent. In addition, the $2500 paid to Special Counsel on August 19, 1997, was based on allowance of interim fees. As such, it was not final and remains subject to subsequent review and subject to possible disgorgement." *Id.* at 1022. The Trustee and Special Counsel subsequently moved the Bankruptcy Court to vacate its Order requiring Special Counsel to disgorge the $2500.00 McNab sanction, or alternatively, to stay enforcement of that Order. The parties argued that the Bankruptcy Court had no jurisdiction to enter the Order because the sanction was entered in the Adversary Proceeding, which had been on appeal in the Northern District of Illinois for months. They also argued that the McNab sanction award was not, and never was, the property of the estate. On May 13, 1998, the Bankruptcy Court denied the Trustee's and Special Counsel's motion to vacate or stay. It is from this order that the Trustee and Special Counsel appeal.

We reject the Trustee's and Special Counsel's challenge to the Bankruptcy Court's April 24, 1998 Order requiring disgorgement of the $2500.00 McNab sanction. Twice in its Order, the Bankruptcy Court specifically noted that it ordered the $2500.00 paid to Special Counsel pursuant to Special Counsel's Second Application for Interim Compensation. *Id.* at 1021, 1022. The Trustee and Special Counsel admit that Special Counsel brought its Second Application for Interim Compensation pursuant to § 331 of the Bankruptcy Code, 11 U.S.C. § 331.

■ An award of interim fees by the bankruptcy court pursuant to § 331 of the Bankruptcy Code, 11 U.S.C. § 331, is not final and is subject to later review by the court. *See In re Taxman Clothing Co.*, 49

F.3d 310, 314 (7th Cir.1995) ("Remember that all awards of interim compensation are tentative, hence reviewable—and revisable—at the end of the case."); *Brouwer v. Ancel & Dunlap (In re Firstmark Corp.),* 46 F.3d 653, 657–59 (7th Cir.1995). For this reason, courts "have uniformly permitted trustees and creditors to seek the return of funds paid to professionals employed in the bankruptcy proceeding." *Matz v. Hoseman,* 197 B.R. 635, 639 (N.D.Ill.1996) (citations omitted).

■ Applying these principles to the present matter, we think the Bankruptcy Court properly disgorged Special Counsel's $2500.00 interim fee on April 24, 1998 and we reject the Trustee's and Special Counsel's challenge to the court's April 24 Order.

## CONCLUSION

For the reasons set forth above, we affirm the decision of the Bankruptcy Court.