### In re KIDS CREEK PARTNERS, L.P., Debtor.

### Bankruptcy No. 94–B–23947.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

June 16, 1999.

---

Neal L. Wolf, Janet S. Baer, Bryan R. Sup, Schwartz, Cooper, Greenberger & Krauss Chtd., Chicago, IL, for Movant.

David A. Belofsky, Douglas M. Belofsky, Steve Shamash, David A. Belofsky & Associates, Chicago, IL, for Respondent.

David R. Herzog, Layfer, Cohen & Handelsman, Chicago, IL, trustee.

## MEMORANDUM OPINION ON LEIGHTON'S MOTION FOR DISGORGEMENT AND TURNOVER OF INTERIM FEES

JACK B. SCHMETTERER,
Bankruptcy Judge.

This bankruptcy case was filed by Debtor Kids Creek Partners, L.P. ("Debtor") under Chapter 7 of the Bankruptcy Code, Title 11 U.S.C. § 101 *et seq.* In December

1994, the Chapter 7 Trustee, David R. Herzog ("Herzog" or "Trustee"), entered into an agreement with Leighton Holdings, Ltd. ("Leighton") which stated, *inter alia*, that if the Trustee brought a certain Adversary Proceeding against Leighton and Leighton prevailed, Leighton would have a superpriority claim against Debtor's bankruptcy estate for legal fees arising out of the Adversary Proceeding as well as arising out of a letter of credit posted by Leighton.

Three years later, Leighton prevailed in the adversary. It then moved to establish the superpriority claim and also for disgorgement of certain professional fees. The Trustee objected. In an earlier opinion, it was determined that Leighton had a valid superpriority claim as to assets remaining in the estate, but reserved ruling on the issue of whether Leighton had a right to compel disgorgement of interim professional fees that were allowed and awarded prior to Leighton's contingent superpriority becoming non-contingent.[1] As more fully discussed below, disgorgement is an appropriate remedy where a bankruptcy estate is administratively insolvent and priority claims remain unpaid. That is the case here because there are insufficient funds to pay Leighton's allowed superpriority claim in full and the Trustee and his counsel have received fees from the estate though they hold a lower priority. Therefore, disgorgement will be ordered. The order will not require payment until appeals from rulings against the Trustee and his lawyers are determined, but interest thereon will run from entry of the order at the judgment rate. Moreover, the order will be interlocutory and the issue revisited should Trustee's pending appeals be successful.

## BACKGROUND

The involved history of this case can be found in the following published opinions:

*In re Kids Creek Partners, L.P.*, 219 B.R. 1020 (Bankr.N.D.Ill.1998) (awarding administrative claim to court reporter and requiring special counsel to disgorge $2,500.00 in interim fees received for pro rata distribution), *aff'd*, 233 B.R. 409 (N.D.Ill.1999); *In re Kids Creek Partners, L.P.*, 220 B.R. 963 (Bankr.N.D.Ill.1998) (awarding superpriority claim to Leighton), *aff'd*, 233 B.R. 409 (N.D.Ill.1999); *Herzog v. Leighton (In re Kids Creek Partners, L.P.)*, 212 B.R. 898 (Bankr. N.D.Ill.1997) (granting judgment on partial findings in favor of defendants); *In re Kids Creek Partners, L.P.*, 210 B.R. 547 (Bankr.N.D.Ill.) (holding Leighton's prepetition security interest did not attach to proceeds from post-petition sale of debtor's real property), *motion to alter or amend denied*, (1997), *aff'd*, 1997 WL 627652 (N.D.Ill. Oct. 2, 1997); *Herzog v. Leighton (In re Kids Creek Partners, L.P.)*, 1997 WL 97122 (Bankr.N.D.Ill. Feb. 28, 1997) (memorandum opinion on facts deemed established for trial); *Herzog v. Leighton (In re Kids Creek Partners, L.P.)*, 200 B.R. 996 (Bankr.N.D.Ill.1996) (denying motion for summary judgment). Only those facts directly relevant to the motion for disgorgement need be repeated here.

As stated, on December 30, 1994, an Order ("Subject Order") was entered authorizing the Chapter 7 Trustee, David R. Herzog, to sell Debtor's interests in the certain property. Pursuant to the Subject Order, the Trustee was to pay in full the secured claim of Leighton. That Order provided in relevant part:

[A] It is further ordered that, upon closing of the transaction authorized by this order, secured creditor Leighton Holdings, Ltd. will immediately be paid the full principal amount of its claim, all accrued and unpaid interest, all attorneys fees, and all costs which it has incurred as of the date of closing. Such

---

1. On March 17, 1999, District Court Judge Kocoras entered a minute order and memorandum opinion affirming this Court's decision. On March 30, 1999, Special Counsel to the Trustee filed notice of appeal to the Seventh Circuit. That appeal is pending.

payment will be without prejudice to any claims of any party as of the date of the payment. As of the time of such payment, the secured creditor ("SC") will obtain a letter of credit issued by a bank reasonably acceptable to the Trustee in favor of the Trustee in the amount of $1.25 million to expire in 45 days. If, within 45 days after issuance of said letter of credit, the Trustee does not initiate a lawsuit against SC, SC will have an allowed super priority administrative claim against the estate, prior to the claim otherwise allowable under section 507(a) of the Bankruptcy Code, in the amount of SC's letter of credit fees, additional attorneys fees, and costs. The Trustee's failure to initiate such a lawsuit against the SC within such 45–day period shall constitute a waiver and release of any and all claims the estate might have against the SC, Lakeside Partners, and Cecil McNab, arising out of the secured loan transactions which are the subject of the SC's claim.

[B] If the Trustee files a lawsuit against SC within such 45–day period, the letter of credit will be extended or renewed as necessary to secure the Trustee's asserted claim until such claim is resolved (or, if the letter of credit is not so extended or renewed then the Trustee may draw on the letter of credit, retain the proceeds of such drawing in escrow, and apply the proceeds as determined by such lawsuit or an agreement of the parties). In the latter event, SC shall have a first priority lien against such letter of credit proceeds in the amount ultimately determined to be appropriate.

[C] If the Trustee initiates such a lawsuit and the SC prevails, then the SC shall have an allowed super-priority ad-ministrative claim, prior to the claim of any holder of a claim otherwise allowable under Section 507(a) of the Bankruptcy Code, for (a) all costs and fees associated with the issuance of the letter of credit; (b) all legal fees and expenses incurred in defense of the lawsuit; (c) all other fees and expenses reasonably incurred in connection with the collection of SC's claim; and (d) any and all funds previously drawn by the Trustee under the letter of credit, together with interest at the SC's contractual, default rate.

On February 15, 1995, within the 45–day period specified in the Subject Order, the Trustee filed his Adversary Complaint against Leighton and others. On August 21, 1995, he was granted leave to employ Special Counsel to represent Trustee in the Adversary Proceeding. Trustee's complaint survived a motion for summary judgment. However, at trial and following close of Trustee's case in chief, Leighton moved for judgment on partial findings and that motion was granted.[2] *See Kids Creek*, 212 B.R. 898.

Following that trial, Leighton applied for allowance and payment of its superpriority administrative claim ($1,657,802.31) and disgorgement of certain interim professional fees. The Trustee objected to the application claiming, *inter alia*, that Trustee had no authority to enter into the Subject Order as it awarded Leighton a superpriority not provided by the Bankruptcy Code. On April 24, 1998, an order was entered allowing Leighton's application for its superpriority claim but reserving the issue of disgorgement for further hearing. Following appeal, that order was affirmed by the District Judge on March 17, 1999, and the affirmance was appealed to the Circuit Court.[3]

---

**2.** Special Counsel and the Trustee have appealed this judgment which was entered October 1, 1997. On March 10, 1999, District Court Judge Grady entered an order which, *inter alia,* dismissed Counts II, IV and VII of the appeal for failure of appellant to brief those counts. Thus, only Counts I (equitable subordination of Leighton's secured claim) and III (breach of contract) of the underlying Adversary Proceeding remain the subject of appeal.

**3.** The four interim administrative expense payments made by the Trustee actually total

During the course of this bankruptcy case, various payments of secured and administrative claims have been made. Leighton seeks disgorgement of payments totaling $87,450.94 allowed and paid to the Trustee and his Special Counsel for their legal fees and expenses.[4] All such allowances were interim awards pursuant to §§ 330 and 331 of the Code, Title 11 U.S.C. Special Counsel's applications for additional allowances are still pending and undetermined.

## Jurisdiction

The disgorgement issues are properly before this Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the Northern District of Illinois. Subject matter jurisdiction lies under 28 U.S.C. § 1334(b). Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (B).

## DISCUSSION

■ Attorneys and other professionals who are employed by the bankruptcy estate receive compensation under § 330 of the Bankruptcy Code which provides for awards of "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A) and (B). In addition, attorneys may apply for interim compensation pursuant to § 331. The reasoning behind the latter provision is to prevent bankruptcy professionals from having to wait until conclusion of the bankruptcy case for compensation and reimbursement. *See In re Metropolitan Electric Supply Corp.*, 185 B.R. 505, 510 (Bankr.E.D.Va.1995); HR Rep. No. 595, 95th Cong., 1st Sess. 330 (1977); S Rep. No. 989, 95th Cong., 2d Sess. 41–42 (1978).

As stated, the Trustee's Special Counsel applied for and received interim compensation in the amount of $53,670.00 and reimbursement for expenses in the amount of $3,180.65, all related to their work on the Adversary suit against Leighton that was lost at trial. *See* Orders dated November 6, 1996 and April 23, 1997. In addition, the Trustee's law firm, Layfer, Cohen and Handelsman, Ltd., acting as bankruptcy counsel to the Trustee, received an award of interim compensation on February 27, 1995, in the amount of $15,222.30 and also on March 12, 1996 in the amount of $15,-422.99. *See* Trustee's Reconciliation of Expenses, Ex. A.

■ Awards of interim attorneys' fees and expenses are not final and can be revisited at any time to effectuate the priority distribution scheme provided in the Bankruptcy Code. *Matz v. Hoseman*, 197 B.R. 635, 639 (N.D.Ill.1996); *Matter of Taxman Clothing Co.*, 49 F.3d 310, 312 (7th Cir.1995) (citations omitted) (stating "all interim awards of attorney's fees in bankruptcy cases are tentative"). It has been said that disgorgement is a discretionary order and is not mandatory solely because of administrative insolvency. *In re Anolik*, 207 B.R. 34 (Bankr.Mass.1997). It is nonetheless the fundamental obligation of a Chapter 7 Trustee and the Court to see to distribution of estate assets according to the statutory priorities. Also, compelling circumstances must be shown to warrant exercise of such discretion.

Section 726 of the Code provides the order of distribution in a Chapter 7 bankruptcy. The first creditors to be paid are priority claim holders as defined under § 507. 11 U.S.C. § 726(a)(1). Of these priority creditors, the first class to receive payment consists of creditors holding claims for administrative expenses allowed under § 503(b) which includes attorneys' fees for professionals employed by the estate. 11 U.S.C. § 507(a)(1). However, in some instances, certain creditors may have a "superpriority" which gives them a prior-

---

$87,495.94 (a difference of $45.00). *See* Trustee's Reconciliation of Expenses, Ex. A.

4. As stated, the District Court's opinion and order affirming the bankruptcy court is currently on appeal to the Seventh Circuit.

ity over every other priority claimant. 11 U.S.C. § 507(b) (stating that where an award of adequate protection fails, the creditor's claim shall have priority over every other priority claim).

> "Superpriority" is a term not defined in the Bankruptcy Code; it is used to describe a claim which, under applicable bankruptcy law and pursuant to court order, is to be paid ahead of some or all administrative expenses, and possibly ahead of secured creditors.... [A] superpriority obtained pursuant to § 507(b) will prime superceding chapter 7 administrative expenses entitled to priority under § 726(b).

*In re Energy Co-op., Inc.*, 55 B.R. 957, 963 n. 20 (Bankr.N.D.Ill.1985).

As previously stated in *Kids Creek*, 220 B.R. 963, adequate protection may come in a number of forms, including a seemingly sufficient equity cushion (citing *Baybank–Middlesex v. Ralar Distributors, Inc.*, 69 F.3d 1200, 1203 (1st Cir.1995)). Thus, a superpriority may be awarded where an equity cushion erodes to the point at which the creditor's claim is jeopardized.

> Here, in agreeing to the sale sought by the Trustee, Leighton gave up its position as an over-secured creditor. To cover its claim for litigation expenses that could have been added to its lien against the real estate, and in return for giving up its security rights, it took the superpriority claim as a new form of adequate protection. In doing so, it paid a cost-i.e., loss of its security-that ... was "actual and necessary" to preserve the estate's equity in the property then sought to be realized by the sale. Obtaining that equity in case-which the Trustee wanted as a war chest to sue Leighton and thereby obtain still more for the creditors-was a net benefit to the estate. Therefore, the substitute superpriority protection afforded to Leighton is by no means outside this Court's authority under § 507(b). .

*Kids Creek*, 220 B.R. at 970. The Trustee and Special Counsel devote much of their present argument to arguing their previously rejected position that the Court lacked authority to approve the superpriority. It is plain that Leighton has a valid superpriority authorized by the Bankruptcy Code. Because of rulings in *Kids Creek*, 220 B.R. at 972, as affirmed by the District Court at 233 B.R. 409, 419–20, the Trustee and Special Counsel cannot argue further that Leighton's superpriority is anything but valid unless they prevail on appeal.

Moreover, the District Judge's opinion stated, albeit in dicta, that it would be appropriate for Special Counsel and the Trustee to disgorge their interim fees. "Leighton has indicated that it has incurred legal bills significantly in excess of the current balance of the Estate assets.... Thus, assuming it prevails in the Adversary Proceeding, Leighton possesses the right to disgorge whatever portion of the $56,850.65 paid to the Special Counsel which is necessary to cover the entirety of its superpriority claim." *Kids Creek*, 1997 WL 627652, *8.

> "[C]ourts have uniformly permitted trustees and creditors to seek the return of funds paid to professionals employed in the bankruptcy proceeding ... Regardless of whether this authority stems from 11 U.S.C. § 105, which empowers the court to issue any order, process or judgment that is necessary or appropriate to carry out [the Bankruptcy Code], or is simply an inherent power of the court in its effort to effectuate the distribution scheme outlined by § 726(b), it is without cavil that the bankruptcy court has the power to disgorge interim professional fees."

*Matz*, 197 B.R. at 639–40 (internal citations omitted).

█ In this case, there is no question that the estate is administratively insolvent. There is likewise no question that Leighton's allowed superpriority greatly exceeds the assets remaining in Debtor's estate. The only funds that exist to pay

the additional amounts due on Leighton's claim are those interim fees previously paid to the Trustee and his counsel. While the Trustee and Special Counsel's interim fees constituted administrative expenses, Leighton's superpriority trumps their administrative expense priorities. Thus, disgorgement is necessary to enable payments under the priority scheme of the Bankruptcy Code—"i.e., to ensure that all creditors of the same class share pro-rata in the available pool of funds." *In re Kingston Turf Farms, Inc.,* 176 B.R. 308, 310 (Bankr.D.R.I.1995). Moreover, disgorgement is necessary to prevent a lower priority class of creditor from receiving payment on their claims until a higher priority creditor has been paid in full. Here, the superpriority creditor has yet to be paid in full, while administrative creditors have received partial payment on their claims. Therefore disgorgement is appropriate and necessary.

▆▆▆▆ Special Counsel and the Trustee argue that there is no basis to order disgorgement of interim fees as both the Trustee and Special Counsel were justified in pursuing the Adversary Proceeding throughout the period for which they were ordered compensation. They cite to *Taxman,* 49 F.3d 310, for the proposition that disgorgement is only appropriate where the bankruptcy professional has somehow breached his or her fiduciary duty to the bankruptcy estate. The *Taxman* case did involve disgorgement of certain fees from a professional who had spent approximately $85,000 to recover preferences in the amount of $32,682.78, who was thereby found to have violated a fiduciary duty. 49 F.3d at 312. However, *Taxman* in no way stands for the proposition that disgorgement is *only* appropriate where a bankruptcy professional has breached his or her fiduciary duty. Rather, disgorgement is ordinarily appropriate to effectuate the bankruptcy distribution scheme. *Matz,* 197 B.R. at 640.

The Trustee and Special Counsel also argue that cases such as *Matz* are irrele-vant as they only involve the statutory priority that Chapter 7 professionals are given over Chapter 11 professionals in cases that convert from Chapter 11 to Chapter 7. While *Matz* did involve Chapter 11 professionals being ordered to disgorge professional fees in order to pay Chapter 7 administrative claims, the opinion in no way limits itself to that situation. Rather, it is clear that disgorgement is appropriate where the distribution scheme of § 426(b) would otherwise be thwarted. *See Matz,* 197 B.R. at 640; *United States Trustee v. Johnston,* 189 B.R. 676, 677 (N.D.Miss. 1995).

Special Counsel again argue, as they did in objecting to Leighton's superpriority claim, that their employment was not conditioned on any prior claim of Leighton. In making this argument, they badly misquote the April 24, 1998, opinion. Their brief states that

... as this Court itself noted, Special Counsel's "employment was not conditioned on any supervening or superior claim or right of Leighton." April 24, 1998 Memorandum Opinion at 27. The Bankruptcy Code, however, permitted the Trustee and this Court to expressly condition Special Counsel's employment upon the contingent superpriority granted to Leighton on December 30, 1994 ... If "[c]ollection of their fees was from the start potentially conditioned in some part on their victory," as this Court concluded nearly three years after Special Counsel's retention, then this Court's Order authorizing that retention should have specified the "reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." Special Counsel's retention, however, was not conditioned on any supervening or superior claim or right of Leighton. April 24, 1998 Memorandum Opinion at 27.

The Trustee and Special Counsel's Response at 17–18. Special Counsel's attempt to rearrange the language of the April 24, 1998, opinion and completely

change the context within which the quoted language appears has not gone unnoticed. The actual text of the April 24, 1998, opinion clearly states that *"Special Counsel also argues* that their employment was not conditioned on any supervening or superior claim or right of Leighton." April 24, 1998, Memorandum Opinion at 27 (emphasis added). The Court's response to Special Counsel's argument is the same now as it was then, namely that "[c]ollection of [Special Counsel's] fees was from the start potentially conditioned in some part on their victory. They have no right to rewrite their bargain at the expense of Leighton's claim that is now superior to theirs." *Id.*

 It is an unhappy consequence that claims of Special Counsel, the Trustee, and other administrative creditors will go unpaid. "But being a creditor and seeing your claim get eaten by a lawyer is a harsh fate as well." *Taxman,* 49 F.3d at 316. "Under the law as it presently exists, knowledgeable bankruptcy attorneys must be aware that the priority ordinarily given to administrative expenses may prove illusive in light of the various provisions in the Code for competing or super-priorities." *In re Blackwood Associates, L.P.,* 153 F.3d 61, 68 (2d Cir.1998) (citations omitted). "Professionals seeking compensation from the bankruptcy estate do so at the risk that the estate will not have sufficient funds to satisfy their claims." *Johnston,* 189 B.R. at 677 (quoting *Guinee v. Toombs (In re Kearing),* 170 B.R. 1, 7–8 (Bankr. D.D.C.1994)). Further, "professionals engaged in the bankruptcy field are presumed to have knowledge of the priority scheme of § 726(b). And therefore are on notice of the potential for disgorgement should the estate be unable to pay all of its administrative expenses." *Matz,* 197 B.R. at 640 (quoting *In re Metropolitan Elec. Supply Corp.,* 185 B.R. 505, 509 (Bankr. E.D.Va.1995)).

Here no special circumstances warrant exercise of discretion to deny disgorgement. Trustee and his regular and Special Counsel simply bet all on victory and lost. They must now pay the price of that loss.

### CONCLUSION

For reasons stated above and pursuant to an order to be entered separately, the Trustee and his regular and Special Counsel will be required to account for and disgorge all interim administrative fees and expenses received during the course of this bankruptcy case. However, while disgorgement is appropriate and will be ordered, the effective date of the order to repay monies will be delayed until all avenues of appeal from the Adversary Proceeding judgment and the order awarding Leighton its superpriority entered on April 24, 1998, and affirmed on March 17, 1999, have been exhausted. Because the monies are due now, interest will run in favor of the estate at the federal judgment rate as provided in 28 U.S.C. § 1961(a)